## 725.  FORD *v.* THE STATE.

1. The practice of examining witnesses by trial judges is disapproved. Such practice frequently delays and defeats justice, and impairs or destroys the right of a fair and impartial trial by jury.
2. The practice in harmony with our judicial system requires trial judges to confine themselves to an enunciation of the law, leaving to counsel

the duty of elucidating the facts, and to juries the right of finding the truth in the evidence.

3. While the mere multiplicity of questions propounded to witnesses by the judge does not of itself constitute error, such usurpation of the prerogative of counsel approaches dangerously near to· the border line of prohibited judicial interference with the exclusive right of the jury.

4. The rigid and extended examination of the witnesses for the defendant on the vital points of the defense by the trial judge had a tendency to discredit the testimony; and, following the decisions of this court in *Sharpton* v. *State*, 1 *Ga. App.* 542 (57 S. E. 929); *Rouse* v. *State*, 2 *Ga. App.* 184 (58 S. E. 416), and *Taylor* v. *State*, 2 *Ga. App.* 723, a new trial must be granted.

Indictment for manslaughter, from Worth superior court—Judge Spence. June 20, 1907.

Argued October 9,—Decided November 11, 1907.

*Jesse W. Walters,* for plaintiff in error.

*W. E. Wooten, solicitor-general, J. H. Tipton,* contra.

HILL, C. J.    Plaintiff in error and the deceased, two negro boys, aged respectively fifteen and nineteen years, were participants in a dance at night.   A difficulty took place between them, and the plaintiff in error shot the deceased three times with a pistol, killing him almost instantly.   The evidence was conflicting as to every material fact.   The testimony for the State made a case of ·unprovoked murder, following a previous difficulty the night before, in which the defendant was the aggressor, and after which he made repeated threats to kill the deceased.·  It appeared therefrom that on the night of the homicide the defendant, without any provocation, assaulted and cursed the deceased, who was unarmed, and immediately drew his pistol and shot him.   The testimony for the defense entirely contradicted these facts.   According to it, the deceased was the aggressor at the previous difficulty, made threats thereafter to kill the defendant, and at the time of the killing, without any provocation, cursed and assaulted the defendant, drew his pistol, and was advancing on the defendant, endeavoring to shoot him, when the defendant, who was trying to avoid the encounter, shot and killed him in self-defense.   There was also evidence of a mutual combat, deliberately planned and sought, and, after preparation with deadly weapons, engaged in with premeditated deadly purpose.   There was also some evidence presenting the old doctrine of manslaughter, where two draw

their weapons upon a sudden quarrel, a combat ensues, no undue advantage being sought or taken on either side, and one kills the other. The jury settled the conflicts in the facts, and declared that the truth made the defendant guilty of voluntary manslaughter. There was ample evidence to support such finding. We therefore can not disturb the verdict, unless some material and harmful error of law was committed.

The charge of the court very clearly and very fully submitted to the jury every grade of homicide as well as the law of self-defense as laid down in the code of this State, and we think the several exceptions to certain portions thereof, whether considered alone or in connection with the entire charge, are without substantial merit. The court not only accurately and clearly presented the law of the case, but submitted fully and impartially the issues in controversy.

It is insisted that the court committed error and "exceeded its power and discretion as the trial judge, in taking charge of the witnesses both of the State and the defendant, conducting a great part of the examination of the witnesses, asking many leading questions, many of which were of a discrediting character, and had a tendency to discredit defendant's witnesses in the opinion of the jury, and thereby injured and damaged him, all of which is shown by the questions and answers of the witnesses. Defendant insists that it is the province of the court to ask questions where the matter is misunderstood, and better perhaps to suggest to counsel and have him elicit the information for the court, and that it is not the proper practice to ask so many questions of the nature of those set out. Defendant insists again that such practice on the part of the court is calculated to impress the jury with the court's opinion of the case." The errors complained of in the foregoing assignment are not clearly and specifically pointed out. All the questions propounded by the court, and the answers thereto, are fully set out as a part of this exception. This court's attention is not called to any question or answer claimed to have been damaging to the defendant, but it is invited to consider the entire examination conducted by the trial judge, consisting of probably five hundred questions and answers, and condemn the whole, or pick out therefrom such as the court thinks justly amenable to the criticisms made. The duty of pointing out error de-

volves upon him who charges error; and courts of review can with propriety refuse to embark upon "a voyage of discovery to find and expose errors." While the complaint in this connection is entirely too general, it challenges the fairness of the trial because of the conduct of the judge in an examination of the witnesses. The court is charged with making an assault upon the very citadel of the defendant's rights,—a fair, impartial, and exclusive trial by the jury on the facts. Because of the gravity of the accusation, this court has waived the lack of definiteness as to specifics, and has given to the entire examination of the witnesses by the judge the most careful consideration. This examination was of great and unusual length; and while we are not prepared to say that the multiplicity of questions propounded by the court, in itself, proves error, we do think such indulgence by the judge approaches dangerously near the line of judicial expression or intimation of opinion. As we have before said in the *Sharpton* case: "It is almost an intellectual impossibility for a judge to engage in an examination of a witness on vital questions of the case on trial, without in some manner, and to some extent, indicating his own opinion." When the examination is not confined to one witness, but extends to many witnesses, and exhibits an active participation by the judge in the elucidation of the facts, we are inclined to think it becomes not "almost," but altogether "an intellectual impossibility." The jury necessarily regards the bringing out of the facts as the duty of the counsel engaged on opposite sides; and when the judge enters upon the arena occupied by the contending parties, he brings to the combat with the witnesses the overwhelming weight which attaches to the idea of judicial impartiality. By the very fact of his examination of the witnesses, jurors are led to the conclusion that the judge entertains an opinion, and they become most alert to discover such opinion. The examination of witnesses at great length by the judge diverts the attention of the jurors from the testimony of the witnesses to the questions asked by the court, in the effort to find out what the judge thinks of the matter at issue. Besides, such usurpation of duty on the part of the judge tends to confuse and disparage the attorneys conducting the case. Viewed from every standpoint, the practice of trial judges participating in the examination of witnesses is unwise. Such practice in crim-

inal cases most frequently results in the eventual escape of the guilty; for where there is a violation of either the spirit or letter of the statute forbidding the intimation of opinion on the facts, however clearly guilt appears, a reversal inevitably follows, and the fact of reversal has great moral weight on a second trial. But while this practice now under condemnation causes frequent, unnecessary, and costly delays of justice, and in many cases its ultimate defeat, yet even the guilty have the right to an absolutely fair, impartial, and exclusive trial on the facts by the jury. The voice of the law is clear and mandatory. On facts, it seals the lips of the judge and makes the jury its only mouthpiece. It is always wiser, safer, better, and juster that trial judges should confine themselves exclusively to an ·enunciation of the law, leaving to counsel the duty of elucidating the facts, and to juries the finding of the truth in the evidence.

Applying the foregoing remarks to the examination of the witnesses by the trial judge in the instant case, we have come to the conclusion, after weighing every question and answer, that the positive mandate of the law which forbids the judge from entering the "domain of conflicting facts" was violated, at least in one instance, at a point where the combat between the prosecution and the defense was crucial and critical. Two vital facts were relied upon by the defense—the backing of the defendant before he shot the deceased, and the possession of a pistol by the deceased which he was trying to use when shot. The court, by a rigid, lengthy examination of the witnesses who testified in favor of the defendant on these two points, must have discredited to some extent this testimony in the minds of the jury. We are all the more clear that this was harmful error from the fact that a belief by the jury in its truth would have authorized a verdict of acquittal. Following the rulings of this court in *Sharpton* v. *State, Rouse* v. *State,* and *Taylor* v. *State,* supra, we are constrained to grant a new trial on this ground.

*Judgment reversed.*