## STATE v. CHARLES O'CONNOR.[1]

December 19, 1922.

No. 22,791.

**Conduct of judge not prejudicial to defendant.**

1. The record does not sustain the contention that the court either by improper questions or remarks prejudiced the defense.

**On appeal defendant cannot attack admission of improper evidence not objected to.**

2. On rebuttal testimony was received that the reputation of the prosecuting witness for truth and veracity was good. This was wrong, for defendant had made no attack upon his character in that respect, but the error does not avail defendant for there was no objection made to its reception.

**No new trial for inaccurate instruction not objected to by defendant.**

3. An inaccuracy in the charge, which so escapes the attention of defendant's counsel that when asked, at the close thereof, whether he thought of anything more to say to the jury, the response was: "No, there is nothing else, your Honor," does not justify a new trial.

**Conviction sustained even when witnesses differ.**

4. The evidence sustains the verdict. The fact that the two wit-

[1]Reported in 191 N. W. 50.

nesses produced by the state differ on important matters does not necessarily preclude the jury from finding a defendant guilty.

**Objection to failure to charge on lesser degree of crime not open to defendant.**
5. No complaint can be made of the failure to submit lesser degrees of a crime than the one charged where no request therefor is made.

**Refusal of new trial because of newly discovered evidence.**
6. There was no abuse of discretion in refusing a new trial on the ground of newly discovered evidence.

**When sentence may be amended.**
7. If the sentence is improper, and in disregard of section 9267 G. S. 1913, it may be amended upon application to the court below.

Defendant was indicted by the grand jury of Rice county charged with the crime of assault in the first degree, tried in the district court for that county before Childress, J., and a jury which found him guilty of assault in the second degree. From an order denying his motion for a new trial, defendant appealed. Affirmed without prejudice.

*Quinn & Moonan* and *Moonan & Moonan,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Lucius A. Smith,* County Attorney, for respondent.

HOLT, J.

The appeal is from a conviction of assault in the second degree. After sentence, a motion for a new trial was heard and denied.

Defendant, a young farmer, resided near two tenant farmers in Waseca county by the name of Fred Cody and George B. Stehly. These neighbors had been on friendly terms, defendant and his wife having been invited by the latter to their home for ice cream on an evening a few weeks prior to the alleged assault. Shortly after that social visit, a misunderstanding seems to have arisen out of the circumstance that a young lad who was to watch cattle for Cody

and Stehly was notified by defendant that he was wanted in Faribault to temporarily take his father's place as gate watchman at a railway crossing. The boy had to remain at Faribault, and thought he had by a telephone talk explained the situation to Mr. Cody. Defendant so understood. But Cody and Stehly claimed that they had heard nothing from the boy, and suspected defendant to be the cause of his not returning. This gave rise to a change of bearing towards defendant, at least he so inferred in that Cody and Stehly omitted the customary friendly greetings and looked in another direction when they passed defendant. That Cody and Stehly felt some resentment appears from their admissions that this matter had been discussed by them and they had agreed that the one first having the opportunity should ask defendant for an explanation, but neither used or attempted to use the telephone connecting the two homes. Stehly had uttered some threats, according to the evidence, which were communicated to defendant. It also appears that defendant had heart trouble and had been cautioned against excitement and over exertion. He claims that when he heard of the threats, he procured the revolver for protection. On August 3, 1921, defendant was at his brother's farm to assist in threshing. Stehly was also there. Both defendant and his brother were apprehensive that Stehly might attack the former, and the work was planned so that the two would not have occasion to come in contact. The evidence bears out defendant's contention that Stehly left his team and walked out of his way to meet defendant when none of the other men of the threshing crew were near enough to interfere. Stehly's version is that defendant pulled out the revolver when about 7 or 8 feet away and with an oath told him to go back; that Stehly did not turn back, but took one or two steps forward, and, when about an arms-length from defendant, the latter fired, the ball entering near Stehly's left nipple and passing out half an inch from the spine, the course being horizontal. Defendant on the other hand testified that, when Stehly came within about two rods from him, he warned him to go back; that instead Stehly advanced; that defendant then drew the revolver, but Stehly made a jump for defendant, grabbing the part of the revolver about de-

fendant's hand, and that in the struggle which followed for the possession of the weapon it was accidentally discharged. As to what occurred just before and at the time the shot was fired, the state produced, in addition to the prosecuting witness, one Emil Klatt. The latter knew of Stehly's alleged threats against defendant and noticing, what seemed to him, the peculiar way in which Stehly led his team toward the defendant, he watched the outcome. He corroborates defendant as to some of the important facts and testitfies that, when within seven or eight feet of defendant, Stehly took a run or jump for him, that the men grappled and the struggle lasted a minute before the revolver was discharged.

There are 78 assignments of error. They will not be separately noticed, but considered as discussed in appellant's brief. It is claimed that the conduct of the trial court was prejudicial, in that there was an undue interference with and improper examination of witnesses, and that the defense was crowded by insisting on a long evening session at the close of the trial. So far as can be gathered from the record there is no ground for the complaint. Fewer questions were asked by the court than usual in a long trial, and the questions were mostly to make clear the meaning of some doubtful expression in an answer, or to repeat some statement that the court had been unable to hear. The attorneys on both sides appear to have conducted the trial without any friction whatever. The rulings were few, and made, as a rule, without comment or explanation. Only once did the trial court become impatient, apparently because the state's witness Klatt hesitated as to how fully he should answer the county attorney's questions, when a remark was made to the witness which might well have been omitted. However, the witness thereupon gave a clear and connected story, covering more than a page of the printed record, of what he saw and heard of the shooting, all of which tended to exculpate defendant. This being the outcome, we fail to see how the criticized remark of the court could have prejudicially affected the defense. Indeed, the whole record, with the exception of the one remark alluded to, evinces the utmost fairness to defendant on the part of both the judge and the county attorney. It reflects a situation far

different from the ones which called forth the decisions in People v. Becker, 210 N. Y. 274, 104 N. E. 396, and Ford v. State, 2 Ga. App. 334, 59 S. E. 88.

Properly defendant introduced evidence of his good reputation. On rebuttal the state offered evidence of Stehly's reputation as a peaceable and law-abiding citizen. This counsel concedes admissible. But, evidently, the court as well as counsel did not realize that with the inquiries last mentioned were linked questions which elicited that the prosecuting witness' reputation for truth and veracity was good. There can be no question of the inadmissibility of such testimony, because the defense had not attacked Stehly's character in that respect. But no objection whatever was made to the reception of evidence as to Stehly's character or reputation either as to being peaceable or truthful. "The rule is general that the defendant must protect his record." State v. Rutledge, 142 Minn. 117, 171 N. W. 275. We see nothing extraordinary in this case to take it out of that rule.

If a sentence, or clause in a sentence in the charge relating to the right of self-defense, is separately considered, the rule is not accurately stated. It is not correct to say that when a person is attacked "he could use no more force than was reasonably necessary to protect himself from" the assault. The true rule is that he could use such force as appeared to him reasonably necessary in the situation he was. The court fully stated this rule in these two sentences, unless the last clause thereeof destroys the effect of what precedes, viz.:

"But the mere belief of a person that it is necessary to use force to prevent an injury to himself is not alone sufficient to make out a case of self-defense for the facts as they appear to him at the time must be such as reasonable to justify such belief. It is not the belief of the person resorting to force to protect his person from a threatened assault which determines the question whether he is justified in so doing, but the question must be determined from the facts and circumstances as they appeared to him at the time, and it is for the jury to say whether from the facts disclosed a reasonable necessity for the use of force existed."

Had the last word been changed to the words "appeared to him to exist," no criticism could be made. The record does not indicate that any instructions were requested. However, at the close of the charge, the court asked defendant's counsel if he thought of anything more to say to the jury. The answer was: "No, there is nothing else, your Honor." We think this waived minor verbal inaccuracies which undoubtedly would have been rectified had attention thereto been called.

It is urged that the evidence does not justify conviction. If the jury accepted George Stehly's version of the shooting, a verdict of guilty could be returned. But it is said the state produced another witness, Emil Klatt, whose story requires an acquittal. We are cited to Jackson v. State, 12 Okla. Cr. 446, 158 Pac. 292, where one of the state's witnesses testified that a bottle of whiskey was obtained for money on a trip to the defendant, while the only other witness for the state testified that they did not go to get whiskey but for a guitar which they got, and that no money was passed and no whiskey was obtained at all. The court held that the one offset the other, and the conviction could not stand. The case is not parallel to the one at bar. Klatt was some distance away. He could not know whether the trigger was pulled intentionally, or whether in the struggle it was accidentally moved. Conceding, as we must, that Klatt's testimony tends to support defendant and in important matters conflicts with Stehly's, it cannot be said that on all vital points it contradicts the latter's. We cannot hold that the evidence does not sustain the verdict.

There was no request to submit lesser degrees of crime than assault in the second degree. In the absence of such request no foundation is laid for complaint here. State v. Gaularpp, 144 Minn. 84, 174 N. W. 445.

A new trial was asked on the ground of newly discovered evidence. It is alleged that, after the trial, Stehly said to one O'Neill: "It was good enough for me I got shot, I wouldn't let Charley bluff me." There is nothing new in this. Stehly testified that he advanced a step or two after defendant drew the revolver and warned him back. He was not "bluffed."

The sentence is attacked as not in conformity with the indeterminate sentence statute (section 9267, G. S. 1913, as amended by chapter 319, p. 455, Laws 1917). The record indicates that it was pronounced immediately upon the return of the verdict, and, perhaps, without due consideration, for in the memorandum attached to the order denying a new trial the court states: "The defendant also claims that the sentence imposed by the court was contrary to the statute in that it was indefinite. If it was error the court has already indicated to counsel its willingness to correct the sentence, but a definite sentence * * * is no ground for a new trial." From this the inference is that the court did not intend to fix a maximum term as may be done under that statute. There is much in this record that calls for a lenient sentence; and the court, under section 9267 has discretion to impose the lighter sentence prescribed in section 8632, G. S. 1913. Application to modify the sentence may therefore be made to the court below upon the going down of the remittitur.

We have examined the other assignments of error, but do not deem them of sufficient importance for discussion. It is enough to state that, taking all of those which defendant is in position to urge in this court, there is not sufficient ground to grant a new trial.

The order denying a new trial is affirmed, but without prejudice to defendant to move the court below for a modification of the sentence.