### STATE v. C. N. BROUGHTON.[1]

February 2, 1923.

No. 23,147.

Conviction sustained.
  1. The evidence sustains the verdict finding the defendant guilty of carnal intercourse with a girl under 18.

Refusal to submit lesser degree of crime.
  2. There was no error in refusing to submit a lesser degree or an included offense.

No prejudicial error in striking out answer to question.
  3. There was no prejudicial error, in view of the record, in refusing to permit a witness for the defendant to explain an answer or striking out the answer given.

Refusal to admit testimony not error.
  4. There was no prejudicial error in denying the defendant permission to show that at the preliminary examination he asked for an examination of the girl and what then occurred.

[1]Reported in 192 N. W. 118.

**Charge to jury.**

5. The charge of the court covered the law of the case, and was fair to the defendant, and there was no error in refusing the instructions requested by the defendant.

**New trial not required by misconduct of bailiff.**

6. A new trial should not result from the misconduct of the bailiff, detailed in the opinion, in suggesting to the jury that the trial judge might go home and it would have to remain in retirement all day, in the absence of prejudice to the defendant. The question of prejudice is usually, though not always, for the trial court, and it was so here.

Defendant was indicted by the grand jury of Le Sueur county charged with the crime of carnal knowledge of a female child under the age of 18, tried in the district court for that county before Tifft, J., and a jury which found him guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Thomas Hessian* and *Moonan & Moonan*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Assistant Attorney General, and *L. W. Prendergast*, County Attorney, for respondent.

DIBELL, J.

Defendant was convicted of the crime of carnal knowledge of a female under the age of 18 years. He appeals from the order denying his motion for a new trial.

1. The defendant, a steam shovel engineer, was working with a state highway crew at Montgomery. The offense is claimed to have occurred in a tent which the defendant and another had near the work. The case presents the usual direct affirmation by the girl which is met by the usual direct denial of the defendant. There are circumstances tending to support the story of the girl and others tending to support the testimony of the defendant. The girl made immediate complaint to her mother. There is some inconsistency in the times given of the occurrences important in the transaction, but not such as to make unbelievable the story of the

girl. In some respects the defendant's account of facts in connection with the transaction are not favorable to him. Though the jury had difficulty in reaching a verdict, the evidence well sustains it.

2. There was no error in refusing to submit a lesser degree or an included offense. The evidence justified a verdict of guilty of the crime charged, as it justified a verdict of not guilty of any offense. We are unable to see a reasonable ground for the finding of a different offense. The defendant was altogether guilty or not guilty at all He claims that there was no offense. The testimony of the girl and of the attending physician indicates that that charged, if any at all, was committed.

3. One Taylor, who worked with the defendant, and was about town with him on the evening of the alleged crime, was a witness called by the defendant. He and another girl were with the defendant and the prosecutrix at the time they started in a general way in the direction of the tent. Later he saw the defendant. He was asked as to his appearance and indicated, though not claiming that he gave particular attention, or perhaps claiming that he gave no special attention, that it was not unusual. He was put to a prolonged cross-examination. Much of it was not directly material. From the record it seems likely that he was confused, and answered questions perhaps recklessly and without reflection. In the verbal combat he was no match for the cross-examiner and was on the defensive and answered a little at random. A portion of the cross-examination was as follows:

Well, now, as a matter of fact, didn't you look at the defendant when you saw him in there, for the purpose of seeing what his appearance would indicate?

A. I did not.

Q. You knew he had been off with a young girl?

A. I knew he was walking with this girl, yes.

Q. You didn't know where he had been to?

A. No, I did not.

Q. You didn't know what he had done?

A. I did not.

Q. And you were not curious to know whether you could find out by looking in his face?

A. It was none of my business.

Q. And that's the reason you didn't note?

A. That's it, exactly.

Q. It was none of your business what the defendant did with that little girl, and that's the reason you didn't attempt to learn from his appearance whether anything had transpired or not.

A. Well, I was pretty sure just about what happened, that's why.

Q. I have no doubt but what you were.

A. I sure was.

Upon redirect examination counsel for the defendant sought to explain what the witness meant. What occurred is best understood by quoting from the testimony:

Q. Mr. Taylor, you said, in answer to counsel's questions, I was pretty sure what happened. What did you mean by that?

By Mr. Odell: Wait a moment, to that I object as incompetent, and immaterial and calling for a speculation of the witness.

By Mr. Moonan: Well, if the court please, I don't want a remark of that kind to stand upon the record, it wouldn't be fair to the defendant, and I think it would not be fair to the defendant.

By Mr. Odell: Well, I know the purpose of it, and I submit it isn't competent.

By the court: He may answer, answer please.

A. Well I know Mr. Broughton, and knew him to be a very nice young fellow and I didn't think there was anything wrong, that there could have been anything wrong.

By Mr. Odell: Now, I move to strike out the first part of that answer as not responsive to the question.

By the Court: Well, I didn't understand. That may be stricken out, I thought counsel was inquiring then with reference to another matter.

By Mr. Odell: I move to strike out the entire answer as incompetent.

By the Court: Strike it out.

By Mr. Odell: Manufacturing evidence in that way, no man ever heard of it.

By Mr. Moonan: Take that down.

By Mr. Odell: Take it down, Mr. Reporter, and give him an exception with a capital E.

By Mr. Moonan: Take everything down.

By Mr. Odell: Yes, sir.

By Mr. Moonan: Now, I ask the court to admonish counsel that those remarks are improper.

By the Court: Well, I think both counsels should be admonished that those remarks are improper.

By Mr. Moonan: Will the Court indicate where I have failed?

By the Court: Well, the Court doesn't care to indicate, if you have any questions ask them; I say, any remarks of that character better be let unsaid.

By Mr. Moonan: I wasn't aware, your Honor, that I had made any, and I regret it, if I had, and I wasn't aware that I had.

By the Court: You may proceed, if you have any questions.

By Mr. Moonan: Well, if the Court please I was about to explain what my purpose was in this question.

By the Court: That isn't necessary.

By Mr. Moonan: Well, may I make another offer to prove?

By the Court: Surely.

By Mr. Moonan: I offer to prove by this witness, at this time, that his answer, in reference to the words used, to-wit: I was pretty sure what had happened was meant to indicate that nothing improper had happened between the young lady, Miss Hanschuh, and this defendant, the statement having been made in answer to plaintiff's interrogatory, and the words being "I am pretty sure what had happened." The reason the offer is made is because an improper inference might be drawn from that against the defendant.

By Mr. Odell: I object to it as incompetent and immaterial.

By the Court: Counsel certainly knows that that isn't proper.

By Mr. Moonan: I wouldn't have offered it if I did, your Honor.

By the Court: It isn't proper, and it should not have been offered.

By Mr. Moonan: May I have an exception?

By the Court: Surely.

It was proper for the witness to explain the answer to which he had been driven by the cross-examination. Counsel for the defendant was not in the wrong. It was proper that he elicit an explanation. We see nothing subject to criticism in his manner of doing it. His attitude was candid and frank. The record would be more satisfactory if the answer had remained and the witness had been allowed to give his explanation. The rulings of the court pressed rather hard upon the defendant and the attitude of the state was not fair. A majority of the court is of the view that there was no reversible error. Taylor was understood by all to be a friend of the defendant and not his accuser. The jury, in the majority view, could not have understood him as stating his belief that the defendant had been engaged in wrongdoing.

4. The defendant sought to show that at the preliminary examination he asked that a doctor examine the girl. It appears, at least inferentially, that he did, and that the attending physician either denied him the right or said that it was a question for the parties. We do not discover that there was prejudicial error in not going into the matter further, either upon the ground that it was proper to show the attitude or bias of the physician, or the defendant's attitude when accused.

5. The defendant formally presented some 18 instructions. The charge of the court was complete, covered the law of the case, sufficiently called attention to the substance of the propositions of law correctly embodied in the defendant's offered instructions, and was unbiased and entirely fair to the defendant. We find no error in the refusal to give in terms the defendant's requested instructions.

6. The jury retired at noon of Saturday. It was out all that day and night. Between 5 and 6 o'clock in the morning the trial judge came to the court house. It is claimed that the bailiff at this time influenced the jury to agree by stating that the judge

might return to his home and that it would be kept in confinement. The affidavit of the bailiff states the circumstances as follows:

"That between the hours of five and six, Sunday morning, the affiant [seeing] the judge of said court, passing in the corridor, went to the door of the jury room and rapping thereon when the door was opened by Gus. F. Ward, who affiant later was informed was the foreman of [said] jury, whereupon substantially the following conversation took place: By affiant, 'Have you come to any agreement yet?' By Mr. Ward: 'Nothing doing.' By affiant: 'The judge might go home, and if he does you might have to stay all day.'

That thereupon Mr. Ward closed the door of the jury room, having stood in said doorway and said door having been partially opened during the foregoing conversation. That during said conversation the door of the jury room was not closed and Mr. Ward stood in said doorway with one hand on the door knob. That no one except the affiant, said bailiff, and Mr. Ward were present, although the remainder of the jury were sitting or scattered about the room within, and were all within sight of the said door."

The jury agreed a few minutes later. In State v. McReady, supra, pages 366, 368, 191 N. W. 816, in considering a less flagrant case, the court said that the conduct of the sheriff "was clearly improper and censurable," but that it was "not of sufficient consequence to affect the result, or to justify a new trial." The conduct of the officer in this case is very censurable. The duties of a bailiff in charge of a jury are ministerial. It is not his duty to listen in on its deliberations, nor to suggest haste, nor to urge an agreement. He can perform punctiliously most of the duties of his office in discreet silence. It is his duty to guard the jury in its deliberations, not to guide it.

A new trial is not to be granted because of the wrong-doing of the bailiff if prejudice does not result. Ordinarily the determination whether prejudice has resulted rests with the trial judge. He is present and has a better understanding of the situation than the appellate court. Cases might arise where it would be the clear duty of the trial court, or even of an appellate court, to grant a new trial because of the bailiff's misconduct. In State v. McReedy,

supra, cases are cited where it was held that a new trial should not be granted because of the bailiff's misconduct. In State v. Peirce, 178 Iowa, 417, 159 N. W. 1050, in some respects resembling this, it was held that the bailiff's misconduct demanded a new trial. Counsel for the state cites other cases to support his view. In this case we defer to the judgment of the trial court.

Order affirmed.