## STATE v. CLIFFORD WARREN.[1]

December 10, 1937.

No. 31,474.

*C. U. Landrum,* for appellant.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, and *H. N. Jenson,* County Attorney, for the State.

HILTON, JUSTICE.

Defendant was convicted of the crime of manslaughter in the second degree in connection with the death of one Henry Spry on the night of October 11, 1936. It was charged that Mr. Spry died from injuries sustained when struck by the defendant's car, and that the defendant was guilty of culpable negligence in the operation thereof at the time and place deceased was struck. The appeal is taken from an order denying defendant's motion to vacate the verdict and grant a new trial. It is not necessary to discuss the evidence tending to show the circumstances surrounding Spry's death and to connect defendant therewith.

[1]Reported in 276 N. W. 655.

It is insisted that the trial judge erred in his charge to the jury. On one occasion therein he stated:

"This defendant is charged with the crime of manslaughter in the second degree. People who have never had their attention called particularly to the different crimes sometimes think of manslaughter as they think of murder, but it is not the same. You who have not made any special study of law may at times confuse the crime of murder in its various degrees with that of manslaughter. In order that you may not think that you are considering the crime of murder in any degree, I will briefly point out to you the distinguishing elements and caution you that the charge against this defendant is not murder at all but manslaughter in the second degree."

He then proceeded to explain that there are various types of homicide and defined murder in the first, second, and third degrees, and also manslaughter in the first and second degrees, pointing out the distinguishing features or elements of each crime, and that defendant was charged with the lesser of those crimes. Defendant contends that this reference to crimes of a greater degree and more serious nature than the one with which he was charged was prejudicial error, because it would tend to start the jurors speculating as to whether or not he might have been charged with a greater offense, and, if they concluded that he might have been, then to convict him of the lesser offense because of a feeling that he was being dealt with leniently. The argument advanced is fantastic. No such conduct on the part of the jury can be presumed. The learned trial judge took particular pains to explain his purpose in defining the various kinds of homicide and in distinguishing the crime with which the defendant was charged. He repeatedly instructed the jurors that the crime charged was second degree manslaughter, and informed them of the elements which they must find existed before they could find the defendant guilty. The many kinds of homicide, involving various degrees of murder and manslaughter are confusing to the average layman, and the method adopted by the judge to clarify this confusion and explain the nature of the crime charged

against the defendant was practical. No error prejudicial to the defendant resulted.

Error is also assigned on the following statement made in the charge:

"I take it from counsel's statements throughout the trial that neither the fact that Henry Spry is dead nor the fact that he was killed in the road at the place in question is disputed."

This statement was repeated later in the charge. Defendant contends that the making of these remarks was prejudicial error in the first instance and was not remedied by any subsequent statements in the charge. We do not agree. Immediately following the remark when first made, the court continued:

"However, you are to be guided by your own memory as to what the evidence shows in that regard, and if there is any dispute on those points, you will be guided solely by the evidence."

Again, at the end of the charge, when counsel had excepted to the remarks, the court charged the jury:

"Furthermore, I said to you I believe that there seemed to be little dispute about the fact that Henry Spry was killed on the highway in question, on the night or early morning in question, or words to that effect. You will also disregard that statement and decide for yourselves upon all of the evidence in the case whether or not Henry Spry was killed on the highway in question or any other place on the night or early morning of the day in question."

The probable effect of the court's remarks on the jury is overemphasized in view of the balance of the charge. Defendant's claim that the prejudice was so great that the harm caused thereby could not be, and was not, remedied, is without merit. Conceding that these remarks should not have been made, any prejudice resulting therefrom was cured by the statements made in the balance of the charge, and no reversible error is shown.

Defendant also complains of the following statement made in the court's charge:

"You will now observe that in the crime of manslaughter there are missing certain of the elements found in homicides constituting the crime of murder. There is absent the design to cause death, either premeditated or unpremeditated; absent the act of committing a felony by one who evinces depravity or a disregard for human life, *and in second degree manslaughter, the offense charged against this defendant, there may be absent the act of committing or attempting to commit a misdemeanor or gross misdemeanor,* and absent the cruel and inhuman treatment characteristic of those other homicides which we have considered. In other words, second degree manslaughter itself negatives any intent to cause death, and the absence of any such intent is not necessarily a defense." (Italics supplied.)

Defendant was charged with the crime of causing the death of deceased through culpable negligence in the operation of his car. The acts relied on to show such negligence were the driving of the car while under the influence of intoxicating liquor, driving at an excessive rate of speed, and failure to keep the vehicle under proper control. It appears that each of these acts is a misdemeanor. Defendant particularly directs his attack at that part of the instruction complained of which we have italicized, and contends that the effect thereof was to charge the jury that in order to find the defendant guilty it was unnecessary for them to find that he was driving while under the influence of intoxicating liquor, or otherwise committing these acts constituting misdemeanors at the time the deceased was killed, but that it need only find that his car struck the deceased. This claim is also entirely without merit. When singled out of the charge, the words may be misleading and subject to the criticism made. But when read in the light of the entire charge, as they must be, there is not the slightest possibility that they had the effect the defendant claims they did.

The statement complained of was made while the court was distinguishing second degree manslaughter from other crimes resulting in death to the victim. The court had told the jury that murder in the third degree was the killing of a human being "by a person

engaged in the commission of, or in an attempt to commit, a felony either upon or affecting the person killed or otherwise." He had also told the jury that homicide was manslaughter in the first degree when perpetrated "by a person engaged in committing or attempting to commit a misdemeanor, affecting the person or property, either of the person killed, or of another." The commission or attempt to commit a misdemeanor affecting the person or property of another is not an element of the crime with which the defendant was charged, as defined in our statute. 2 Mason Minn. St. 1927, § 10078. It was the obvious purpose of the trial judge in making the statement complained of to point this out to the jury and thus further distinguish the latter crime from the one type of first degree manslaughter to which he had previously referred. It was not because the acts in question were misdemeanors, but rather the fact that they would tend to prove the element of culpable negligence which made them important. This latter fact was also pointed out to the jury. The trial judge did not refer to these acts as misdemeanors, but told the jurors that they could consider such acts, if they found them to be facts, in determining whether the defendant was guilty of culpable negligence. "Culpable negligence" was defined for the jury, and time and again it was stated that such negligence on the part of the defendant must be found before they could return a verdict of guilty. Statements such as the following were continually made during the charge:

"The act of culpable negligence is alleged to have been the manner of operation by defendant of his automobile proximately causing that death, and this act and alleged culpable negligence, if any, must be proved by the state beyond a reasonable doubt."

The jury could not have misunderstood these instructions. The charge may be subject to a criticism as to its length, occasioned undoubtedly by the trial judge's commendable purpose to be absolutely fair and impartial to the defendant, but a careful examination of it fails to reveal any error prejudicial to him.

The remaining assignments of error go to the refusal of the court to grant a new trial on the ground of misconduct of the jury and

also of one of the bailiffs in charge of the jury. Defendant submitted affidavits of two of the jurors at the time he moved for a new trial. These affidavits state in effect that on several instances outside the jury room the affiants and other members of the jury had a conversation with the bailiff in which the latter made certain remarks of such a nature as to be highly prejudicial to the defendant. The affidavits also charge the same bailiff with other reprehensible conduct in front of members of the jury. The misconduct charged is denied in an affidavit of the court officer accused, and his denials are supported by the affidavit of a lady bailiff who was in charge of the women jurors. Assuming that the affidavits of the jurors were admissible as the basis of a motion for a new trial because relating to their conduct outside the jury room, we are not inclined to interfere with the trial court's action in refusing to grant the motion. It is settled that the granting of a new trial for misconduct of the jury rests almost wholly in the discretion of the trial court, especially when, as here, the motion is decided on conflicting affidavits, and its action will not be reversed on appeal except for a clear abuse of that discretion. 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7105, note 7. The same is true as to the alleged misconduct of the bailiff. This is necessarily so, because, due to the opportunity the trial judge has of observing the jurors and court officers and also events occurring during the trial, he is in a far better position to determine the facts when misconduct on the part of those persons is claimed. The affidavits are squarely conflicting. If the trial judge believed the statements of the jurors involved, he certainly would have granted a new trial without hesitation. He makes the following statement in his memorandum:

"I had occasion to observe the jury as its members returned from their lunch, in the custody of its officers, at the time in question, and I have read the affidavits. I am convinced that there was no misconduct by the officers or by any member of the jury. The jury was in custody at the time. Their affidavits are not admissible, but, assuming them to be, I find no misconduct, the allegations

having been completely met by counter affidavits presented by the state."

The circumstances fail to show any abuse of discretion which would warrant our interference with this conclusion.

This disposes of all matters involved in this appeal.

Affirmed.