## STATE v. HENRY J. SOLTAU.[1]

January 30, 1942.

No. 33,008.

[1]Reported in 2 N. W. (2d) 155.

*Franklin F. Ellsworth* and *E. L. Dills,* for appellant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, *Ed J. Goff,* County Attorney, and *William G. Compton,* First Assistant County Attorney, for the State.

PETERSON, JUSTICE.

Defendant was convicted of perjury and appeals.

It is alleged that on February 19, 1940, defendant, as a witness for the prosecution upon the trial in the municipal court of Minneapolis of one James Hefferon, doing business as the Prince Cafe, on a charge of unlawful off-sale of one quart of whiskey, falsely testified that he, in company with one Bruce Pogue and one Dell Winchester, entered Hefferon's saloon; that he there purchased one quart of Old Tradition Straight Bourbon Whiskey, for which he paid three dollars; and that he took the whiskey away with him from the saloon. It is claimed that his testimony was false in that he never entered the saloon, that he did not purchase any whiskey, and that he did not carry any away with him from the saloon.

We shall state the evidential facts in connection with defendant's contention that the evidence is not sufficient to sustain the conviction. The procedural facts will be stated in connection with the assignments of error relating to such matters.

1. It is undisputed that defendant testified as charged during the Hefferon trial. Pogue and Winchester testified substantially the same as defendant did at that trial. Subsequently Pogue and Winchester repudiated their testimony and claimed that the true facts are as we shall presently state them. Defendant adheres to his testimony at the Hefferon trial as a true version of what occurred.

On the night of February 2, 1940, defendant, Winchester, Pogue and his wife, and a Mrs. Katherine Larson went in an automobile to Columbia Heights and to a place on Central avenue northeast in Minneapolis to observe whether there were any law violations in connection with the sale of intoxicating liquor. All except defendant, who remained in the automobile, entered the place on

Central avenue. There Pogue picked up some "drunks," who offered to take him to a place where they could buy some whiskey. Pogue rode in the car with the drunks. The others returned to defendant's car and rode with him following Pogue and the drunks. At about one o'clock in the morning on February 3, they arrived near Hefferon's place, where Pogue and the drunks got out of their car. Defendant parked across the street from Hefferon's place. Winchester got out and accompanied Pogue and the drunks into Hefferon's saloon. So far there is no dispute in the evidence.

Winchester and Pogue testified that they and the drunks went into the saloon, which was about to close for the night; that the drunks informed the bartender that Winchester and Pogue were friends of theirs and that they wanted a bottle; that the bartender handed a quart of whiskey of the brand mentioned over the bar; that Winchester took it and paid three dollars for it; that he put the bottle inside his overcoat; and that he and Pogue then returned to defendant's car, where Winchester claims that he wrote his initials on the bottle in pen and ink and gave it to defendant. They also testified that defendant remained with Mrs. Pogue and Mrs. Larson in his automobile parked across the street from the saloon while they were in the saloon making the purchase.

Defendant testified that he went into the saloon with Winchester and Pogue; that he made the purchase himself; that he paid three dollars for the bottle; and that he took it out of the saloon himself. He admitted that the two women remained in his automobile.

Mrs. Pogue and Mrs. Larson testified that they and the defendant remained in the parked automobile while Winchester and Pogue were in the saloon.

It was undisputed that after the whiskey was purchased all five of the party went to defendant's home, where his wife and daughter prepared a lunch and where some sealing wax was put on the top of the bottle and an impression made in it by Winchester with his ring.

Defendant claims that a few days later he took the bottle to the city chemist, who broke the seal in opening the bottle for the pur-

pose of taking a sample to make a chemical analysis of the contents for use on the trial. A quart bottle of whiskey of the brand mentioned, which did not have Winchester's initials on it, was produced at the trial of Hefferon's case in municipal court. On the trial below the claim was made that defendant had "switched" bottles.

Defendant's testimony was not altogether persuasive. For example, he testified that he asked the bartender if he could buy a bottle of whiskey; that the bartender did not ask him what kind he wanted, but sold him a bottle; and that he paid three dollars for it. Apparently defendant did inquire and was not told the price, but he paid the right amount.

On the precise point in issue, the quantitative weight of the evidence was plainly against the defendant. And on this point defendant's testimony was not entirely persuasive. It is unquestioned that defendant bore a good reputation in the community. This is a case where the evidence presented a jury question. Where the evidence is conflicting, the question of guilt in perjury as well as in other cases is one of fact for the jury. State v. Storey, 148 Minn. 398, 182 N. W. 613, 15 A. L. R. 629; State v. Chick, 192 Minn. 539, 257 N. W. 280.

2. On cross-examination defendant was permitted to show that Winchester was a witness in a case entitled "State v. Sermai"; that he had known one Engebritson for about 12 years; and that he denied seeing Engebritson 15 or 20 times while there was a warrant outstanding for his arrest. The court ruled out as improper cross-examination a question by which defendant sought to elicit that Winchester was in Engebritson's "place at one time for eight hours." The materiality and relevancy of the question does not appear on its face. No offer was made to show that the question was material or relevant. Testimony which on its face is not material or relevant and not shown to be so should be rejected. Parties should confine their proofs to the issues.

3. Subsequent to the Hefferon trial and prior to the trial below, Winchester and Pogue pleaded guilty to a charge of perjury that

their testimony given upon the Hefferon trial was false. No instruction was given concerning the effect upon the weight of Winchester's and Pogue's testimony of their previous convictions of perjury.

The jury should be instructed that a witness's prior conviction of crime may be considered in determining his credibility and the weight of his testimony. State v. Wehde, 226 Iowa, 47, 283 N. W. 104. No request was made for such an instruction. An instruction of this kind is cautionary in nature. It is not error to fail to give an unrequested cautionary instruction relating to the weight of certain testimony. State v. Jenkins, 171 Minn. 173, 213 N. W. 923.

4. There was no instruction that the weight of the evidence should not be determined solely by the number of witnesses. Such an instruction is proper. State v. Schmidt, 155 Minn. 440, 193 N. W. 954. See Benson v. Northland Transp. Co. 200 Minn. 445, 274 N. W. 532. But there was no request for such an instruction. Like the one considered in the preceding paragraph, the instruction in question was cautionary in nature. Absent a request therefor, it was discretionary with the court to give it. State v. Jenkins, 171 Minn. 173, 213 N. W. 923.

5. The court did not instruct the jury that a conviction cannot be had upon the uncorroborated testimony of an accomplice or accomplices. It is claimed that Winchester and Pogue were accomplices and that the rule with respect to accomplices and the necessity for their corroboration should have been given. There was no showing of any express agreement on the part of defendant and the witnesses to commit perjury upon the Hefferon trial. The testimony shows that defendant told Winchester and Pogue that he was going to look after things. At the trial he gave the testimony in question. They heard his testimony. Without any prearrangement they testified substantially the same as he did. Certainly they were not accomplices as a matter of law. Conceding without deciding that the jury might have found them to be accomplices as a fact, we shall consider the claimed error upon that assumption.

The rule of law is that a conviction cannot be had upon the uncorroborated testimony of an accomplice. Mason St. 1927, § 9903; State v. Elsberg, 209 Minn. 167, 295 N. W. 913. The testimony of Mrs. Pogue and Mrs. Larson was ample corroboration of the facts upon which the charge of perjury was based. The conviction was not had upon the uncorroborated testimony of the alleged accomplices. State v. Dunn, 140 Minn. 308, 168 N. W. 2.

It is error for the court not to submit a matter in issue even without a request to charge. Robertson v. Burton, 88 Minn. 151, 92 N. W. 538. The matter in issue here was the charge of perjury. This was adequately submitted. The corroboration related to the proofs of the matter in issue.

The statute prescribes a substantive rule of law concerning the quality of the proof necessary to convict. It is based on the distrust of the testimony of accomplices. State v. Smith, 144 Minn. 348, 175 N. W. 689. At common law a conviction could be had upon the uncorroborated testimony of an accomplice, but the trial judge was under the duty of giving a cautionary instruction concerning the weight of such testimony. State ex rel. Jeffrey v. Tessmer, 211 Minn. 55, 56, 300 N. W. 7. The statute had made a rule of law out of a rule of practice. 7 Wigmore, Evidence (3 ed.) § 2056. But it has not changed the nature of the instruction. An instruction concerning the necessity of corroboration of accomplices and the weight of their testimony is cautionary in its nature. Such an instruction should be given as a matter of course. Failure to give such an instruction, absent a request therefor, however, is not error. State v. Quinn, 186 Minn. 242, 243 N. W. 70; State v. Lawlor, 28 Minn. 216, 224, 9 N. W. 698.

6. The daily newspapers publicized the trial with numerous articles, some of which bore glaring headlines that *"Soltau Trial Whiskey Exhibit Disappears,"* *"Bottle Switched for Trial, Former Soltau Aid Claims,"* *"Two Court Officials Testify,"* and *"Man's Arrest Causes Stir in Court Room."* The jury had been cautioned against reading newspaper accounts of the trial and to avoid forming any fixed opinion concerning the facts until the case was submitted.

The newspaper articles have not been returned to us. It is obvious that the first two articles refer to the testimony that defendant did not produce at the Hefferon trial the bottle which Winchester purchased and that the defendant had switched the bottles. There was testimony that two officers of the municipal court as witnesses identified certain exhibits used at the Hefferon trial. The last mentioned newspaper article referred to an incident that occurred in the courtroom while the trial judge and counsel were engaged in the judge's chambers. A man who had had a nervous breakdown and who claimed to know Pogue tried to get in contact with him for the purpose, as he claimed, of consoling him.

All the facts were known to one of defendant's counsel, by whose affidavit they were made to appear in support of the motion for a new trial. During the trial these matters were not brought to the attention of the court, and no application for judicial action concerning them was made. Where the defendant knows that newspaper articles concerning the trial were read by jurors and with such knowledge proceeds with the trial to a final conclusion without objection, he waives his right to object. State v. Lilja, 155 Minn. 251, 193 N. W. 178. The same is true of the arrest incident.

There was some showing that some jurors procured copies of the newspapers and read them and that defendant did not acquire knowledge of such facts until after the trial. So far as appears, the articles were reports of incidents which occurred at the trial and not outside the courtroom. Presumably, the jurors knew the facts concerning such matters. On the face of the showing there was no prejudice to defendant. The conduct of the jurors in reading the newspapers was a mere irregularity, but not ground for a new trial. State v. Williams, 96 Minn. 351, 105 N. W. 265.

7. It is also claimed that during a recess on the second day of the trial the bailiff wrongfully communicated with the jury. Defendant claims that the fact was not discovered by him until after the trial. Two jurors made affidavits that the bailiff stated to eight jurors, "Now you all have got your minds made up; whatever is said, don't you change your minds. Stick to it." The

bailiff and one of the eight jurors by affidavit denied that he made such a statement. The conflicting evidence contained in the affidavits presented a fact question for the court. Implicit in the order denying a new trial is a finding that the charge against the bailiff was not true. It has not been shown wherein the court erred in coming to its conclusion. Of course, a bailiff should not communicate with the jury except so far as it is necessary to perform his duties. At common law in criminal trials, communications between a bailiff and a jury were absolutely prohibited, except to make known their necessities and to answer the question whether they had agreed on a verdict, and any communication except those permitted vitiated the verdict without a showing of prejudice. The rule now is that the verdict will not be set aside unless prejudice is shown. Whether there was such a communication and whether it caused prejudice are fact questions to be determined by the trial court in the exercise of sound discretion. State v. Warren, 201 Minn. 369, 276 N. W. 655; State v. Broughton, 154 Minn. 390, 192 N. W. 118; 23 C. J. S., Criminal Law, § 1449. Here, the finding that there was no communication is decisive against defendant.

While the rule as now settled requires a showing of prejudice to vitiate a verdict, trial courts should be vigilant to prevent any communications between bailiffs and juries except such as are absolutely necessary to provide for the needs of the jurors and to inform the court that a verdict has been reached. Any relaxation of the rule has the appearance of and leads to positive abuse. As said in State v. Broughton, 154 Minn. 396, 192 N. W. 121, *supra,* a bailiff "can perform punctiliously most of the duties of his office in discreet silence. It is his duty to *guard* the jury in its deliberations, not to *guide* it." (Italics supplied.)

8. Numerous questions put to witnesses by the county attorney are assigned as misconduct. The county attorney inquired of defendant concerning the finances of the Hennepin County Enforcement League, of which defendant was a member and by which he was employed, whether defendant's expenses included the purchase price of his automobile, he mingled his money with the league's,

and defendant had accepted money for any detective work. There was no objection to any of these questions.

Then there was some inquiry concerning a letter written to the judge of probate of Renville county recommending Winchester and Pogue, the purpose of which was to fix a date.

Defendant's testimony showed that he resided in south Minneapolis and that prior to October 15, 1940, he moved to the east side near the state university. Then he was asked and answered without objection: "Q. Then you voted, you went back and voted over there where you lived before, didn't you? A. I did." After another question was asked, the court upon objection ordered stricken all reference to defendant's going back to the south side to vote.

There was no misconduct in asking the questions which were answered without objection. Nor can error be assigned on receiving the testimony for lack of objection at the time. State v. Padares, 187 Minn. 622, 246 N. W. 369. The admission of the letter to prove the date was permissible. Evidence otherwise inadmissible may be received for a special purpose, such as fixing the time when an act occurred. James E. Carlson, Inc. v. Babler, 144 Minn. 125, 174 N. W. 824. No prejudice can be claimed as a result of the question and answer which were stricken.

9. No ruling or decision in the course of a trial can be reviewed on appeal in the absence of a settled case or bill of exceptions. Only those facts shown by the case or bill of exceptions can be considered. There is no substitute for a settled case or bill of exceptions. A settled case or bill of exceptions, however, covers only the proceedings in court, and matters not occurring in court may be shown by affidavit. State v. Dingman, 177 Minn. 283, 285, 225 N. W. 82.

Under the rule, numerous assignments relating to improper questioning of prospective jurors during the impanelling of the jury cannot be considered because the proceedings were part of the trial and were not included in the settled case. Ham v. Wheaton, 61 Minn. 212, 63 N. W. 495. Defendant attempted to supplement

the record by an affidavit showing that the purpose of the question relative to the letter to the judge of probate of Renville county was to connect defendant with one Peters, whom newspaper accounts stated was charged with extortion in connection with law enforcement in that county. The settled case cannot be supplemented by affidavit. State v. Henrionnet, 142 Minn. 1, 10, 170 N. W. 699.

Likewise, we cannot consider a statement not part of the record, but shown by affidavit of one of defendant's counsel, that the county attorney stated in a loud voice that no question of punishment by imprisonment was involved.

Numerous assignments relate to the misconduct of the county attorney in his closing argument. The argument was not part of the settled case. Defendant attempted to show it by a transcript of the minutes thereof made by a stenographer who took it down. The verity of the transcript was shown by her affidavit. The argument is part of the trial and cannot be thus shown. Mathwig v. M. St. P. & S. S. M. Ry. Co. 145 Minn. 429, 177 N. W. 643. For reasons already stated, an affidavit does not operate as a substitute for a settled case. A transcript of a stenographer's notes cannot take the place of a settled case. This is true although the official court reporter made the notes and the transcript. Thompson v. Lamb, 33 Minn. 196, 22 N. W. 443. We have had occasion so frequently and recently to state the proper way to object to arguments of counsel and to preserve claims of error in respect thereto that we do not deem it necessary to go over the ground again. Objection should be made at the time, or, in lieu thereof, the argument should be taken down by the official reporter, and then the objections should be made before the jury retires to afford the trial court an opportunity to correct error, if any. Then the argument, objections, and rulings should be made a part of the settled case. State v. Jansen, 207 Minn. 250, 290 N. W. 557. For lack of a proper record, we cannot consider the claims of misconduct of the county attorney.

We considered upon evidence by affidavit the assignments relating to the alleged misconduct of the jury in reading the newspapers and the alleged improper communications between the bailiff and the jury, because such matters did not occur in the course of the trial and hence the record of the trial could not, as it did not, show them. State v. Dingman, 177 Minn. 283, 225 N. W. 82, *supra*.

10. Defendant also urges that the sentence is "unusually hard and severe." The punishment for perjury committed upon the trial of a misdemeanor, as here, is not less than one nor more than five years' imprisonment. Mason St. 1927, § 10022. Defendant asked the trial court for a suspended sentence, which it denied. It sentenced defendant to imprisonment for one year. The trial court has discretion to suspend sentence. There is nothing here to show abuse of that discretion. Defendant, if so advised, may renew his application for leniency. State v. O'Connor, 154 Minn. 45, 51, 191 N. W. 50.

---

The trial judge stated that defendant had had a fair trial before a jury of unusual intelligence and attentiveness. Defendant was ably defended by counsel, who complimented the trial judge highly on what he said was an absolutely fair and just charge and a fair trial throughout. A careful consideration of the entire record confirms us in the views then expressed by counsel and that the matters urged now as error did not seem to be serious or important at the trial. We think, however, that it would have been better if the court had given the omitted cautionary instructions. We do not approve the failure to give them. But, as has been pointed out, those omissions are not reversible error under the circumstances. The verdict of guilty was a surprise and a shock to defendant and his counsel. That undoubtedly has prompted them to search for error with a view to obtaining a new trial. We find no error. The judgment and order should be affirmed.

Affirmed.

Mʀ. Jᴜsᴛɪᴄᴇ Sᴛᴏɴᴇ, not having heard the oral argument, took no part in the consideration or decision of this case.

