STATE, Respondent, v. VAN RUSCHEN, Appellant.

(160 N. W. 811.)

(File No. 3979.   Opinion filed December 30, 1916.   Rehearing denied
March 5, 1917.)

1.   Criminal Law—False Pretenses—Information, Sufficiency of—
Obtaining Signature—"by Color of False Token," Surplusage.

Under Pen. Code, Sec. 645, providing that every person who,
with intent to cheat or defraud another, designedly, by color
of any false token, or other false pretense obtains signature
to any written instrument, etc., is punishable etc., held, that
false pretense by oral statements or representations may con-
stitute an element of the crime, without either color or aid of
any false token or writing; therefore, where in an information
for obtaining, "by color and aid of a false token and writing
and by false representation," the signature of a certain person
to a release of all the lots described in a certain mortgage,
by falsely, etc., representing that said release was only of a
fraction of the whole number of lots embraced in the mortgage,
no "false token or writing" is attempted to be alleged or iden-
tified in the information, and that clause therein may be
treated as surplusage.

2.   Same—False Pretenses—Procuring Signature to Mortgage Re-
lease—Information, Sufficiency of—Statute.

An information under Pen. Code, Sec. 645, charging that,
designedly, and with intent to cheat and defraud, by falsely
representing that a certain instrument, which a certain person
executed, etc., was a release of a mortgage on 3 lots, when in
fact it was a release of 39 lots, sufficiently stated an offense,
under said statute, as against the objections that it failed to
allege that said person was induced by false representations to
subscribe her name, that it failed to allege that she was cheated
or defrauded, or to allege that any trick, artifice or deception,
was used excepting the bare statement that the writing was
a release, etc.; although the information is inartistically
drawn.

3.   Same—False Pretenses—Obtaining Signature to Instrument—
Elements of Offense.

The intent to defraud, the designedly false representation,
reliance thereon, the obtaining signature thereby, and injury
to the party whose signature was obtained, constitute the
elements of the statutory crime of obtaining the signature of a
person to a written instrument with intent to cheat or defraud,
under Pen. Code, Sec. 645.

4.   Same—False Pretenses—Defrauding by Procuring Signature to
Instrument—Evidence, Sufficiency—Rule of Evidence.

Under Pen. Code, Sec. 645, **held,** that the objection that a false representation that the written instrument in question releases but 3 lots, when on its face it releases 39 lots, could not have deceived a person of ordinary intelligence, that the person in question had at hand the means of detecting the falsehood, etc., and that the evidence fails to sustain the charge, is untenable, since, where fraud is alleged, the former doctrine of due care and diligence has given way, under recent authority, to what is deemed the doctrine of comparative intelligence, under which doctrine the signing of the paper without the reading of it is held to involve more than the negligence of the signer, since the signature itself was procured by fraud of the other; which rule is amply sustained by authority.

5. **Same—False Pretenses—Procuring Signature to Instrument— Evidence, Burden of Proof.**

In a prosecution for false pretense in procuring signature to an instrument, under Pen. Code, Sec. 645, whether the representations were made, were false, were intended to defraud, and were relied upon, and actually deceived prosecutrix, were all matters of fact to be proved under the allegations of the information.

6. **Same—False Pretenses—Evidence—Inability to Read Instrument, Reliance on Representation, Competency.**

In a prosecution, for false pretenses in procuring the signature to an instrument, under Pen. Code, Sec. 645, evidence of prosecutrix tending to show that she could not read English print or writing, and that she believed and relied on defendant's statement that the instrument she signed released from the mortgage only three of the 39 lots, was competent.

7. **Same—False Pretenses—Evidence, Sufficiency of, Elements to be Proven.**

Evidence, involving prosecutrix's testimony that she could not read or write English; that defendant told her he would like to sell the lots covered by her mortgage, and have her release them when sold, etc., that he afterwards told her he had sold three lots and wanted them released, defendant giving an entirely different version of the conservations, **held,** sufficient to support a jury's finding that prosecutrix was in fact deceived by the representations as to contents or effect of the instrument she signed, and that she did in fact rely upon the statements of accused; the law requiring only that representations were made with intent to defraud, were false, and that they actually deceived the person accused intended to defraud; it being unnecessary to show that the victim could with reasonable diligence have ascertained that the representations were false.

**8.  Same—False Pretenses—Evidence, Sufficiency—"Testimony of Two Witnesses," Corroboration—Statutes—Secs. 364, 365, Code Cr. Proc., Distinguished.**

In a prosecution for false pretenses in procuring signature to an instrument, under Pen. Code, Sec. 645, the testimony of two witnesses, children of prosecutrix, that they had had a conversation with accused concerning the lots on which prosecutrix held a mortgage, and that accused told them that his mother had a mortgage on some 39 lots in a certain town; that he had sold 3 of them, that the mother agreed, in case he sold any of the lots, that she would give him a release for as many lots as he sold, and that he had sold 3, and wished them (the children) to tell the mother he would like to have her release those 3 lots, was sufficiently corroborative evidence of the prosecutrix' testimony that accused had represented to her that the release, which she signed, only covered 3 out of the 39 lots, within the meaning of Code Cr. Proc., Sec. 65, providing that defendant cannot be convicted of false pretenses, if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense be proven by the testimony of two witnesses or that of one witness and corroborating circumstances.

**9.  Same—False Pretenses—Fraudulent Intent, Sufficiency of Evidence—Question for Jury.**

In a prosecution for fraudulently obtaining the signature to an instrument, under Pen. Code, Sec. 645, the existence of fraudulent intent was for the jury, upon all the evidence. Evidence held sufficient to sustain finding of fraudulent intent.

Polley, P. J., not sitting.

Appeal from Circuit Court, Turner County.    Hon. Joseph W. Jones, Judge.

The defendant, H. Van Ruschen, was convicted of the crime of fraudulently procuring the signature to a written instrument, and he appeals.    Affirmed.

*Spangler & Haney, Bogue & Bogue,* and *Jones & Jones,* for Appellant.

*Clarence C. Caldwell,* Attorney General, *Byron S. Payne,* Assistant Attorney General, and *D. E. Hanson,* State's Attorney, for the state.

(4) To point four of the opinion, Appellant cited:  Finlayson v. Finlayson, 21 Pac. 57-60; Farlow v. Chambers, 21 S. D. 128; Wyman v. Wilmarth, 1 S. D. 172; Walker v. State, 1915C, L. R. A. 1161, and cases there cited; State v. Cameron, 117

Mo. 641; Com. v. Grady, 13 Bush. 285; Com. v. Ganghy, 3 Met. 223 S. R. 113-119-120-121.

Respondent cited: People v. Smith, (Calif.) 84 Pac. 450; Miller v. People, 22 Colo. 530, 45 Pac. 408; Thompson v. People, 113 Ill. 531.

(8) To point eight of the opinion, Appellant cited: Code Cr. Pro. Sec. 365; People v. Gibbs, 33 Pac. 630, 631.

Respondent cited: People v. Gibbs, supra; Ex parte Chatfield, (Cal.) 36 Pac. 948; People v. Martin, 36 Pac. 952; People v. Ward, (Calif.) 89 Pac. 874; State v. Neimeyer, 66 Iowa, 634, 24 N. W. 247; State v. Phelps, 5 S. D. 480; State vs. Brandell, (S. D.) 129 N. W. 242, 26 S. D. 642; 12 Cyc. 455.

SMITH, J. Appeal from a judgment of conviction and an order overruling a motion for a new trial.

The information alleges:

"That H. Van Ruschen, late of, etc., * * * did then and there willfully, unlawfully, feloniously and designedly and with intent to cheat and defraud one Tetta Lammers, by color and aid of a false token and writing, and by falsely representing that a certain written instrument, which the said Tetta Lammers did then and there execute and deliver to said H. Van Ruschen, as follows, etc. (here is set forth in hæc verba an instrument purporting to be a release, reciting payment, satisfaction and discharge, of a mortgage executed by defendant and his wife to Tetta Lammers, dated January 31, 1912, and duly recorded, covering thirty-nine lots in the town of Marion Junction) was only a partial discharge of a certain real estate mortgage (describing the mortgage above referred to), and released said mortgage only as to the three lots (describing them), and by means of said false representations and pretenses obtained the signature of said Tetta Lammers to the said written instrument, to-wit, the said release of said real estate mortgage; whereas in truth and in fact the said written instrument * * * was not a release and satisfaction of said mortgage as to (three lots), but was in truth and in fact a release and satisfaction in full of said real estate mortgage; and said H. Van Ruschen had paid upon said indebtedness only the sum of $150.00; all of which was well known to him, the said H. Van Ruschen, and that Tetta Lammers relied upon

the representations so made by the said H. Van Ruschen, contrary," etc.

[1] At the opening of the trial, the defendant objected to the introduction of any evidence for the reason that this information does not allege facts constituting a public offense. The information is drawn under section 645, Penal Code, which provides:

"Every person who, with intent to cheat or defraud another, designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable," etc.

No "false token or writing" is attempted to be alleged or set out or identified in the information, and that clause in the information may be treated as surplusage. Under this statute, false pretenses by oral statements or representations may constitute one element of the crime, without either "color or aid of any false token or writing." Barton v. People, 135 Ill. 405, 25 N. E. 776, 10 L. R. A. 302, 25 Am. St. Rep. 375; 11 R. C. L. 838 (18).

Appellant's first contention is that this information fails to state facts which constitue a crime under the statute, in that there is no allegation that Tetta Lammers was induced by any false representation to subscribe her name to said release of mortgage, in that there is no allegation that she was in any manner or degree cheated or defrauded, in that it is not alleged that any trick, artifice, or deception was used, excepting the bare statement that the writing was a release of 3 lots, when in fact it was a release of 39 lots.

[2-4] The information is inartistically drawn, but we think sufficiently charges that the accused, designedly and with intent to cheat and defraud Tetta Lammers, obtaining her signature to a release or discharge of a real estate mortgage executed to her by accused and his wife for $1,000 covering 39 lots, on which indebtedness only $150 had been paid, by falsely representing to her that said discharge was an instrument or writing which released only 3 of said lots, whereas in truth and fact said instrument was not a release of 3 lots, but was a release in full of the mortgage covering 39 lots, all of which was well known

to him; and that Tetta Lammers relied upon the representations made to her by the accused. The intent to defraud, the designedly false representation, her reliance thereon, the obtaining her signature thereby, and her injury, constitute the essential elements of the statutory crime.

Appellant's real contention appears to be that a false representation, that the written instrument released but 3 lots, when on its face it released 39 lots, could not have deceived a person of ordinary intelligence; that she must be presumed to have ordinary intelligence; and that she had at hand the means of detecting the falsehood, and could not have been deceived by false representations as to the contents of an instrument which she had before her when she signed it. It is urged that such an allegation would not be sufficient ground for setting aside a contract in a civil action, much less to convict of a crime, citing Finlayson v. Finlayson, 17 Or. 347, 21 Pac. 57, 3 L. R. A. 801, 11 Am. St. Rep. 836; Farlow v. Chambers, 21 S. D. 128, 110 N. W. 94. The decision in the latter case was grounded upon negligence disclosed by the evidence, and, as stated in the opinion, was not "one in which the signer was prevented from ascertaining the truth by subterfuge or some fraudulent device." Where fraud is alleged, the former doctrine of due care and diligence to avoid being cheated has given way, under more recent authorities, to what Mr. Black terms the "doctrine of comparative intelligence."

"In such case the signing of the paper, without reading it, involved more than the negligence of the signer, since the signature itself was procured by the fraud of the other." Herreid v. C., M. & St. P. Ry. Co., 159 N. W. 1064 (S. D.).

This rule is amply sustained by the authorities. People v. Cummings, 123 Cal. 269, 55 Pac. 898; Lefler v. State, 153 Ind. 82, 54 N. E. 439; People v. Bird, 126 Mich. 631, 86 N. W. 127; State v. Southall, 77 Minn. 296, 79 N. W. 1007; Miller v. People, 22 Colo. 530, 45 Pac. 408; Johnson v. State, 36 Ark. 242; Oxx v. State, 59 N. J. Law, 99, 35 Atl. 646; State v. Stewart, 9 N. D. 409, 83 N. W. 869.

[5] The information was sufficient to advise the accused of the nature and cause of the accusation and to enable him to prepare his defense as well as to enable him to plead a conviction

or acquittal in bar of another prosecution upon the same transaction. Whether the representations were made, were false, were intended to defraud, and were relied upon and actually deceived Tetta Lammers, were all matters of fact to be proved under the allegations of the information. State of West Virginia v. Hurst, 11 W. Va. 54; People v. Jefferey, 82 Hun, 410, 31 N. Y. Supp. 267; Clifford v. State, 56 Ind. 245; State v. Butler, 47 Minn. 483, 50 N. W. 532; Norris v. State, 25 Ohio St. 217, 18 Am. Rep. 291.

[6] At the trial, evidence of Tetta. Lammers tending to show that she could not read English print or writing, and that she believed and relied on Van Ruschen's statement that the instrument she signed released from the mortgage only 3 of the 39 lots, was received over proper objections, and error is assigned. This evidence was clearly competent. Appellant also assigns as error insufficiency of the evidence to sustain the verdict, in that Tetta Lammers had the instrument she signed before her own eyes at the time she signed it, and had the means of knowing the truth in her own hands, and therefore could not have been deceived as to the contents of the instrument. This contention perhaps has been sufficiently answered in what we have already said as to the sufficiency of the information.

The question here, however, is as to the legal sufficiency of the evidence to establish the fact that Tetta Lammers was induced to sign the release by false statements made to her with fraudulent intent by the accused. She testified in substance as follows: That she had lived in Marion 22 years; was born in Germany; came to this country in 1892; her husband died in 1895; had been acquainted with defendant Van Ruschen all that time; had business dealings with him; identified as exhibits the thousand dollar note and mortgage securing it; that she could not read or write English; that nothing had been paid on the thousand dollar note except the interest, and $150; had a talk with Van Ruschen in regard to what should be done if he sold some of these lots; he said he would like to sell the lots when he had a chance and would like to have her release lots that he sold, and would pay the money to her when he sold lots; that he

came to her house in Marion, July 11, 1914, and said he had sold three lots to Henry Fogel for $150 and wanted the three lots released; asked him:

" 'Can you do that, three lots, without releasing them all, take them off?' and he says, 'Yes.' Then I tell him, 'You must give me the money, the $150.' He says: 'I give you $100. I make a sidewalk that cost me a whole lot.' I tell him, 'No, you must give me the $150,' that it would reduce the principal and interest, and he says: 'All right, I go over and get a man and I come back right away. Maybe I can get Mr. Cook.' I do not know what he would get Mr. Cook for. He came back about half hour after that with Mr. Cook. He take a paper out of his pocket and lay it on the table. Mr. Van Ruschen says: 'Mrs. Lammers promised me that when I can sell some of them lots she will release them.' I says: 'He want me to release them 3 lots; he sell 3 lots on Henry Fogel for $150, and he want me to release them.' I says, 'I must have the money, the $150.' Van Ruschen says he got no money on hand, but want to give me a check. Mr. Cook said: 'Write your name here,' and I write my name on, and then Mr. Cook write his name, make his stamp on. Then he give it to Van Ruschen. I have not seen the paper since. No, I don't read; I don't try to, I can't. I did not read the paper. I can't read English. Nobody read the paper to me. Yes, I believed at the time I signed this paper that it was a release of only 3 lots sold to Henry Fogel. No, I would not have signed that release if I had known that it released all the 39 lots. Yes, I relied on what Van Ruschen told me, that it was a release of 3 lots only. After the note was due I found out that the release was on all the lots—the 39 lots. That was in 1915, in this year."

The accused denied all of these statements and gave an entirely different version of the conversation had at the time the release was signed, to the effect that his indebtedness was substantially all paid and that Tetta Lammers agreed to release the mortgage as to all the lots.

[7] Upon the issue of fact it was the duty and province of the jury to determine the credibility of the witnesses, and we cannot adjudge as a matter of law that Tetta Lammers was not in fact deceived by the representations made as to the contents

or effect of the instrument she signed, or that she did not in fact rely upon the statements of the accused.

The modern authorities seem to require only that the representations were made with intent to defraud, were false, and that they actually deceived the person whom the accused intended to defraud. The modern doctrine is concisely stated in 11 R. C. L. (13), where it is said:

"There seems to have been an effort in a large number of cases to shift the responsibility for the deception to the prosecuting witness, by showing that it was by reason of his negligence and lack of precaution that the deception was made possible. This appears to be an attempt to invoke the rule in civil actions of deceit that, when a person had at hand the means of investigating the false representations, and might have determined their falsity by the exercise of only ordinary prudence, he will not be heard to say that he was deceived. Although this rule has been applied in some cases, chiefly the early ones, the courts are now generally agreed that the defendant's guilt does not depend upon whether the victim could, with reasonable diligence, have ascertained that the representations were false. When all the circumstances evince that the representation was made designedly, with an intent to cheat, and was calculated to deceive and capable of defrauding, the prisoner cannot excuse himself by saying that if the victim had been sharp, vigilant, and astute he could have detected the fraud by using the means of detection available to him."

See, also, authorities hereinbefore cited.

[8] Appellant further contends that the evidence is insufficient to sustain the verdict, for the reason that two witnesses did not testify to the alleged false pretense, and there are no circumstances disclosed by the evidence to corroborate the testimony of the one witness, Tetta Lammers, as required by section 365, Code Crim. Proc., which provides that:

"Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any money, personal property or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless

the pretense, or some note or memorandum thereof, be in writing, either subscribed by, or in the handwriting of the defendant, or unless the pretense be proven by the testimony of two witnesses, or that of one witness and corroborating circumstances," etc.

Jerry Lammers, a son of the prosecutrix, testified that on the forenoon of July 4, 1914, he had a conversation with the accused concerning some lots on which his mother held a mortgage; that accused told him that his mother, Tetta Lammers, had a mortgage on some 39 lots in the town of Marion Junction, and that he (Van Ruschen) had sold 3 of the lots to Henry Fogel; that the mother had agreed, in case he sold any of the lots, she would give him a satisfaction or release for as many lots as he sold, and said to him:

"Now, I have sold three, and I wish you to explain that to your mother and tell her that I would like to have her release those three lots that I sold to Henry Fogel. My sister Henrietta was with me."

The testimony of the sister Henrietta was in substance the same. This conversation was flatly denied by the accused.

If the accused in fact made the statements testified by these two witnesses, it cannot be doubted that such statements were corroborative of the evidence of the prosecutrix. People v. Ward, 5 Cal. App. 36, 89 Pac. 874; Commonwealth v. Castles, 9 Gray (Mass.) 121, 69 Am. Dec. 278; State v. Townsend, 19 Or. 213, 23 Pac. 968; State v. Walsh, 25 S. D. 30, 125 N. W. 295.

It may be observed that the statute (section 364, Code Cr. Proc.) requiring corroboration of the testimony of an accomplice differs somewhat from section 365. Under the former statute, the corroborative evidence must connect the defendant with the commission of the offense, and evidence which merely shows the commission of the crime or the circumstances thereof is not sufficient; while, under the latter section, any "circumstances" which corroborate the testimony of one witness as to the "pretense" alleged to be false is sufficient. It is as to this one element of the crime, the pretense, that the statute requires corroboration. The "pretense" charged in the information, that the instrument signed released the 3 lots sold to Fogel, as testified to by Tetta Lammers, is certainly corroborated by the statement

alleged to have been made by the accused to the two witnesses, that he had sold three of the mortgaged lots to Fogel, and wanted Tetta Lammers to release them. It is conceded on the face of the record that the instrument signed by Tetta Lammers released all the 39 lots, and it follows that the representation charged, if made by the accused, was false.

[9] The existence of fraudulent intent was for the jury upon the whole evidence, and, under presumably proper instructions, they found adversely to the accused. We cannot say as a matter of law that the evidence is insufficient to sustain such finding.

We have considered with much care all the assignments of error, and, although we have not discussed them all in detail, we find none which in our judgment would warrant a reversal.

The judgment and order of the trial court are therefore affirmed.

POLLEY, P. J., not sitting.