## In re VAN RUSCHEN.

### (160 N. W. 1006.)

(File No. 3917. Opinion filed January 20, 1917.)

1. **Attorneys—Disbarment—Fraudulently Procuring Mortgage Release—Procuring Moneys—Procuring Moneys from Administrator Under Power of Attorney—Sufficiency of Evidence.**

Findings of a referee in disbarment proceedings, based in part upon a judgment of conviction for fraudulently, etc., inducing accused's mortgagee to release all of mortgaged property; that he had fraudulently secured such release, had converted to his own use money deposited with him for safekeeping by clients, substituting therefor his personal notes, and that he had fraudulently procured signature of heirs to an agreement for a collection commission, under which he had collected moneys from an administrator belonging to them, were sufficient to warrant disbarment; and the evidence supports such findings.

2. **Same—Disbarment—Scope of Inquiry.**

The real and vital issue to be determined in disbarment proceedings, is whether accused, from the whole evidence submitted, is a fit and proper person to be permitted to continue in the practice of law. And where the commission of crime is involved in such proceeding, the real question is not whether accused has been guilty of some crime and should be punished therefor, although the fact that he has been convicted, or has been shown guilty of crime, should always be taken into consideration in determining his fitness to continue in practice.

Proceedings for the disbarment of H. Van Ruschen, attorney at law. Judgment of disbarment.

*C. C. Caldwell, Attorney* General, for the State.

*Spangler & Haney,* and *Alan Bogue, Jr.,* for Defendant.

(1) To point one of the opinion, the State cited: Sec. 704, Political Code; In re Kirby, 10 S. D. 322; 2 R. C. L. 1089; In re Egan, 154 N. W. 521; Secs. 686, 688, 692 and 697, Political Code; In re Egan, 157 N. W. 210; In re Egan, 22 S. D. 335; 2 R. C. L. 1095.

Defendant submitted, regarding the Hofer charge, that: It is clearly evident that they persistently refused to accept Mrs. Hofer's share of the proceeds of the partition sale because they believed they were entitled to the entire quarter and would prejudice their claim if they accepted anything less. True, Van Ruschen might have extinguished his obligation by a tender and deposit of the amount due the Hofers, but his failure to do so did not constitute a conversion or embezzlement of the funds. If Mrs. Hofer desired payment she was at liberty to sue to recover the amount due, but it is evident that neither she nor her husband was willing to take this money for fear it would prejudice their claim to the entire quarter.

McCOY, J. In this proceeding in disbarment the accused attorney, among other things, was charged with having fraudulently and criminally, by false representations, induced one Tetta Lammers, a mortgagee, to whom accused, as mortgagor, owed money secured by a real estate mortgage upon 39 town lots, to execute a certain release upon the whole of said 39 lots, when in truth and in fact she intended to execute and thought she was executing a release upon only three of said lots. It also appears that in the circuit court of Turner county accused was informed against by the state's attorney for having feloniously and willfully secured, by false pretenses and representations, the signature of said Tetta Lammers to said release of 39 lots; and that upon the trial of said action before a jury the said accused was found guilty as charged in said information; and that an appeal was taken to the Supreme Court from said judgment of conviction, and which appeal resulted in the affirmance of said judgment. State v. Van Ruschen, 38 S. D. 187, 160 N. W. 811. Based upon said judgment of conviction the referee, to whom this cause was referred for findings of fact and conclusions of law, has filed report that the conduct of the accused in relation to the obtaining of said release from Mrs. Lammers was unlawful, wrongful, and fraudulent.

[1] The accused was also charged in this proceeding with wrongfully and fraudulently having procured from Joshua Hofer and wife the sum of $1,600 for which he has failed to account to them. From the findings of the referee it appears that Mrs. Hofer claimed some interest in the estate of her deceased

father, then being probated, and that the accused was employed to represent her interest and was paid for his services. Upon the final distribution of said estate Mrs. Hofer became entitled to receive $1,600 then in the hands of the administrator. Mrs. Hofer was dissatisfied with said amount, claiming that she was entitled to a portion of her father's real estate. The accused thereafter appeared at the country residence of the Hofers and procured their signatures to a contract authorizing him to work for them in the interest of securing such inheritance, for which they agreed to pay him 10 per cent. of whatever amount he might collect for them, and that he should have one year in which to transact said business and make settlement thereof. The accused used this contract as his authority to go to the administrator and collect the $1,600 theretofore adjudged to belong to Mrs. Hofer, and which sum he has ever since retained. No other services of any kind were performed, or attempted to be performed, by him, and there was none other that he could have performed with reference to the collection of the $1,600, as he then well knew. This transaction with the Hofers the referee found to be wrongful and unprofessional. The accused now contends that the evidence was insufficient to sustain the findings and conclusions on the Hofer charge. We are of the view that such findings and conclusions are amply sustained by the evidence. There is evidence, tending to show that the Hofers, being Germans and not understanding the English language, did not know the contents or purport of said contract, although the same was written in the German language, and did not know that said contract might be used by the accused to obtain possession of the $1,600 then in the hands of the administrator, but thought that said contract related to the recovery of a land inheritance and the collection of rents and profits for the use thereof, and that the Hofers relied in executing said contract upon the representations of accused that the contract related to the securing of the claimed land inheritance of Mrs. Hofer.

[2] The accused is also charged with having procured one Griller to deposit some $800 in cash with him for safe-keeping in an envelope to be deposited in a bank, and that the accused in some manner abstracted said cash from said envelope and substituted in place thereof his own personal notes. There were

other charges in relation to other transactions. These other charges, including the Griller charge, were found by the referee to be not unprofessional, fraudulent, or dishonest. We have carefully examined the evidence relating to these charges found to be not unprofessional, and while we are of the view that the evidence in relation thereto is conflicting, still we are also of the view that these transactions tend to show a very unusual course of professional conduct of the sort that is sometimes termed "sharp practice" that can neither be sanctioned nor approved by this court. We must keep in mind that the real and vital issue to be determined in disbarment proceedings is, Is the accused, from the whole evidence submitted, a fit and proper person to be permitted to continue in the practice of law? The real question is not whether the accused has been guilty of some crime or other, and should be punished therefor, although the fact that he has been convicted, or has been shown to be guilty of a crime, should always be taken into consideration in determining his fitness to continue in practice. In re Egan, 36 S. D. 228, 154 N. W. 521.

Based upon the findings and conclusions of the referee, we are of the view that the accused should be permanently disbared from practicing law in this state, and that his name be stricken from the roll of attorneys authorized to practice law by this court; and judgment may be so entered, with costs.

POLLEY, J., took no part in this decision.