STATE OF SOUTH DAKOTA, Respondent, v. ALICK, Appellant.

(252 N. W. 644.)

(File No. 7424. Opinion filed February 1, 1934.)

*Danforth & Davenport,* and *R. F. Riemer,* all of Sioux Falls, for Appellant.

*M. Q. Sharpe,* Attorney General, *Herman L. Bode,* Assistant Attorney General, and *C. G. Aaberg,* State's Attorney, of Brookings, for the State.

POLLEY, J. The defendant was convicted on an information charging him with obtaining property by means of false pretenses. His motion for a new trial was overruled, and he appeals to this court.

It appears from the record that on and for a long time prior to the 1st day of August, 1929, the defendant was engaged in buying and shipping cattle and hogs from various points in Brookings and Lake counties. A few days prior to the 1st day of August, 1929, the defendant went to the farm of one Adolph Hellekson and entered into an agreement for the purchase of certain cattle then owned by said Hellekson. The agreement as originally entered into was to purchase 47 head of said cattle for the lump sum of $4,000. They then made an additional agreement for the purchase of a cow at the agreed price of $75, which was paid for at the time by giving to Hellekson a check for that amount of money

and which check was thereafter cashed by Hellekson. Defendant then agreed to pay an additional $10 to Hellekson for caring for said cattle until defendant was ready to ship them.

Early in the morning of August 1st defendant appeared at Hellekson's farm accompanied by two of his hired men; all three of them riding in a truck. Hellekson had 59 head of cattle in his yard at the time. He and his two hired men, with the assistance of defendant and his two men, proceeded to sort said cattle and drove out of said yard 11 head thereof that were to be retained by Hellekson, leaving, as claimed by Hellekson, 48 head of cattle that were to be turned over to defendant. Hellekson then requested defendant to pay for said cattle before the gate was opened. In compliance with this request, defendant gave Hellekson his check for $4,010 which check was accepted by Hellekson in full payment for the said cattle. The gate was then opened, and the cattle were driven out in the presence of the defendant and his two assistants. The cattle were driven a distance of some five miles from Hellekson's farm to the town of Sinai, from which point the cattle were to be shipped. It is contended by defendant that, when he was in the act of weighing said cattle preparatory to loading them into the cars, he discovered that there were two head missing. In other words, that he had but 46 head of cattle instead of 48. He claims that he then went to the telephone office and called up Hellekson's home for the purpose of informing him of the shortage; that a woman's voice answered and informed him that Hellekson had gone to Volga. He then telephoned to the Wentworth bank in the town of Wentworth, against which bank said check was drawn, and directed the cashier of the bank to stop payment on the said check. He proceeded immediately, however, to ship the said cattle to the Morrell packing plant in Sioux Falls. Whether said cattle had departed from Sinai before the alleged telephone call was made or before he stopped payment on the check does not appear from the record, but all three of these acts took place at about the same time. Defendant does not appear to have seen or attempted to communicate with Hellekson until on the 5th or 6th day of August, when, accompanied by an attorney at law, he went to Hellekson's place and claimed that he had received but 46 head of cattle, whereas he should have had 48, and offered to settle with Hellekson, provided he would deduct $300 from the

amount represented by the check. The purchase price of the cattle averaged a trifle over $85 a head, so that in making this request for a settlement he not only wanted to deduct the cost of the two head he claimed to be missing, but more than the cost of three head. This offer was rejected by Hellekson, and up to the time of the trial of this action defendant had not paid any part whatever of the purchase price of said cattle.

Immediately after giving Hellekson the above check on the morning of August 1st, defendant went to the home of a brother of Hellekson from whom he purchased hogs at the agreed price of $3,991 and paid therefor with a check on the said Wentworth bank for said amount. At the time of issuing said checks, defendant did not have money enough on deposit in said bank to pay said checks, or either of them, and the records of said bank showed that at the close of business on the last day of July, 1929, defendant had an overdraft in said bank of $269.61.

The information charges that, when defendant delivered the said check to Hellekson, he then and there by delivery of the said check represented the same to be a true and valid check for $4,010, and that he had money on deposit in said Bank of Wentworth in an amount sufficient to pay the said check on presentation, whereas the said check was false and worthless and that he did not have on deposit in said bank money sufficient in amount to pay the said check on presentation; that defendant well knew at the time of the delivery of said check that the same was worthless, "* * * and that he then and there intended to stop payment of said check and that the said Adolph Hellekson relied upon and believed the said writing to be true and valid and worth the sum of $4,010.00 and that the said check when submitted by him for payment would be truly and duly paid and that when said Adolph Hellekson, after having submitted said check for cash payment, said check was returned with notation, 'payment stopped.'"

At the close of the state's testimony and again at the close of all the testimony defendant moved the court to advise the jury to return a verdict for the defendant upon the ground in effect that the state had not submitted evidence of the facts charged in the information sufficient to take the case to the jury. This motion was overruled, and error is predicated thereon. This assignment is without merit. In the first place, it has been settled

by this court that reversible error cannot be predicated upon the refusal of the trial court to advise the jury to acquit. State v. Stone, 30 S. D. 23, 137 N. W. 606. Moreover, it is never proper to advise the jury to acquit if the court believes there is sufficient evidence in the record to take the case to the jury.

Our statute, section 4249, R. C. 1919, reads as follows: "Every person who designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable by imprisonment in the state penitentiary not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment."

When defendant executed and gave to the complaining witness his check for $4,010 he represented to complainant that he then had on deposit in the Wentworth bank a sufficient amount of money to pay said check and that the same would be paid on presentation. He did not have and does not claim to have had a sufficient amount of money on deposit to pay said check, but claims that he had sufficient credit at said bank so that the check would be paid on presentation. On this issue the trial court charged the jury as follows: "If it appears to your satisfaction from the evidence in this case beyond all reasonable doubt that the defendant designedly obtained from Adolph Hellekson either 47 or 48 head of cattle by reason of the giving of the check, State's Exhibit '1,' for $4,010.00, and it also appears to your satisfaction from the evidence beyond all reasonable doubt that the said Carl Alick did not have funds or credit in the Wentworth Bank of Wentworth, South Dakota, to pay said check, and then knew that he did not have sufficient funds or credit in said bank to pay the same, then, and in that event the said defendant, Carl Alick, obtained said cattle by reason of a false pretense or a false writing, and it would be your duty to find the defendant guilty."

Upon the question of the defendant's intent at the time he gave the check to stop payment thereon, the court instructed the jury as follows: "If you should find from the evidence in this case and beyond all reasonable doubt that at the time the said Carl Alick delivered said check, State's Exhibit '1,' to the com-

plaining witness, Adolph Hellekson, and obtained the 47 or 48 head of cattle from said Adolph Hellekson by reason of the giving of said check, and that at the time he delivered said check to the complaining witness, Adolph Hellekson, it was then and there his intent to stop payment upon said check and not to allow the same to be paid by the said Wentworth Bank, upon which said check was drawn, then and in that event the giving of such check would be a false pretense of payment and the check itself would be a false token or writing and the defendant would be guilty of obtaining said cattle under a false pretense, and it would be your duty to find the defendant guilty. But in order to find the defendant guilty by reason of the stoppage of the payment of said check you must find from the evidence, beyond all reasonable doubt, that the stoppage of payment of said check was not for the reason that there was two head of cattle short, but you must find that there was a design and intent on the part of the defendant, Carl Alick, at the time said check was given, to stop payment on it and not allow it to be cashed as a genuine order or check for the payment of money, and this intent or design you must find from the evidence beyond all reasonable doubt existed at the time the said check was delivered to the said Adolph Hellekson. Direct and positive testimony is not necessary to prove this intent. It may be inferred from the facts and circumstances shown by the evidence. The intent with which an act is done is an act or emotion of mind seldom if ever capable of direct and positive proof, but it is to be arrived at by such just and reasonable deductions or inferences from the acts and facts proved as the guarded judgment of a candid and cautious man would ordinarily draw therefrom. The law warrants the presumption, or inference, that a person intends the results or consequences to follow an act which he intentionally commits, which ordinarily do follow such acts. And as hereinbefore stated, if you find that the said Carl Alick designedly gave this check in question, State's Exhibit '1,' and did thereby designedly obtain said cattle from said Adolph Hellekson, and it appears from the evidence, beyond all reasonable doubt, that at the time he gave the same his intent was to stop payment upon said check it would then be your duty to find the defendant guilty."

The giving of this instruction was error for which a new trial must be granted. Appellant was charged with, and tried

for, the crime of obtaining property under false pretenses, and an intent to stop payment on a check would not come within the meaning of false pretense. A false pretense is defined to be " * * * the false representation of an existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive and does, in fact, deceive, and by means of which one person obtains value from another without compensation." 25 C. J. 589. It must be a false representation of a past or existing fact, made with knowledge of its falsity, and with intent to deceive and defraud, and which is adapted to deceive the person to whom it is made. 25 C. J. 589. It does not include the doing or failure to do some act in the future. To stop payment on a check after the consideration therefor has passed to the maker of the check requires the doing of a future act which takes the transaction out of the definition of false pretense as above set out. People v. Orris, 52 Colo. 244, 121 P. 163, 41 L. R. A. (N. S.) 170, is squarely in point. The prosecution was for obtaining property by false pretenses. The act relied upon was the intent to stop payment of a check after receiving the consideration therefor. The court reiterates the rule that a false pretense, to support a criminal prosecution, must relate to some fact, present or past, and that a promise or intent to do some act in the future is not sufficient. In this case the matter in the information relating to the intent to stop payment on the check should be treated as surplusage and evidence thereof excluded.

Under the above instruction as given by the court, some of the individual jurors may have based their verdict upon the charge that the defendant did not have money on deposit or a credit arrangement sufficient to pay the check on presentation for payment, and others of the jurors may have based their verdict upon the belief that the defendant intended when he gave the check to stop payment thereof before it could be presented.

■ Over defendant's objection the state was permitted to cross-examine one of its own witnesses. This is assigned as error and argued at length by defendant in his brief. It is the general rule, of course, that a party may not cross-examine a witness called to the stand by himself, but there are well-recognized exceptions to this rule. In this case the witness was the cashier of the bank against which the check involved was drawn. He was

friendly to the defendant and unfriendly to the prosecution. He was also a very reluctant witness. He had testified in a civil action growing out of the transaction involved in this case. His testimony in this case differed in some respects from the testimony he gave in the other case, and it was only by the use of cross-examination and the asking of leading questions that the prosecution was able to obtain the facts from this witness. Under these circumstances the state had a right to cross-examine this witness, and no error was committed. State v. Laymon, 40 S. D. 381, 167 N. W. 402.

Error is predicated upon the giving of certain instructions by the court and also upon the refusal to give certain instructions requested by the defendant. We have carefully examined the instructions given, and believe that they fully and correctly cover all the issues in the case and that no error was committed by the court. The other assignments made by defendant have all been carefully considered, and we find no prejudicial error.

The judgment and order appealed from are reversed.

CAMPBELL and RUDOLPH, JJ., concur.

ROBERTS, P. J., concurs in result.

WARREN, J., disqualified and not sitting.