STATE OF SOUTH DAKOTA, Respondent, v.
LIEN, Appellant

(30 N. W.2d 12.)

(File No. 8901. Opinion filed December 17, 1947.)

**Wm. J. Holland** and **Frank R. McKenna,** both a Sisseton, for Appellant.

**Sigurd Anderson,** Atty. Gen., and **Charles P. Warren,** Asst. Atty. Gen., for Respondent.

ROBERTS, J. After having been convicted of obtaining property by false pretenses, defendant appealed from the judgment.

The information charges that Lester A. Lien did, on May 25, 1944, wilfully, unlawfully and feloniously obtain from Christ Peterson property of the value of $48.75; that by delivery of a check to Peterson, drawn on the Bank of New Effington, defendant falsely represented that he had sufficient funds in or credit with such bank for payment of the check; that such representation was false for the reason that defendant had no funds on deposit or credit with the bank in an amount sufficient to pay the check; and that relying upon such representation Peterson parted with his property.

It is asserted that the information does not state a public offense; that the judgment is not supported by the evidence; that the court erred in receiving and rejecting testimony and in giving to the jury and refusing certain instructions; and that the state's attorney was guilty of prejudicial misconduct during the trial.

SDC 13.4202, enumerating the different acts that constitute an offense under its provisions, provides in part: "Every person who designedly, by color or aid of any false token or writing, or other false pretense * * * obtains from any person any money or property; * * * is punishable by imprisonment in the State Penitentiary * * *. The

use of a matured check or other order for the payment of money as a means of obtaining any such * * * property by a person who knows that a drawer thereof is not entitled to draw for the sum specified therein, upon the drawee, is the use of a false token within the meaning of this section, although no representation is made in respect thereto".

 It is necessary from the very nature of the offense that the representation be false and the accused must know that it is false. As stated in the case of State v. Pickus, 63 S. D. 209, 257 N. W. 284, 289: "From the earliest days of the common law, the element of scienter, the willful and corrupt mind, has been of the essence of the crime of obtaining money or property by false pretenses. It is specifically preserved, and always has been, in our statute by the use of the word 'designedly'. This court has always held, in substance, that 'designedly' false means in substance willfully, knowingly, and intentionally false and that a false pretense is designedly made when it is made with knowledge on the part of the maker that it is in fact false. See State v. Van Ruschen, 1919, 38 S. D. 187, 160 N. W. 811; State v. Paul, 1918, 41 S. D. 40, 168 N. W. 739; State v. Taylor, 1921, 44 S. D. 332, 183 N. W. 998; State v. Alick, 62 S. D. 220, 221, 252 N. W. 644. All these decisions emphasize that the false pretense contemplated by our statute as a necessary element of the crime is a knowingly false pretense and that seems to be 'the rule of the authorities without a dissenting voice." It is argued that an information charging the offense of obtaining property by false pretenses must allege all the material elements of the offense and hence must set forth the pretenses and the scienter. The information uses the words "wilfully, unlawfully and feloniously" for the word "designedly" used in the statute. It is not necessary to use the precise language of the statute. Language may be used which is the equivalent in meaning of that found in the statute. State v. Paul, 41 S. D. 40, 168 N. W. 739; State v. Taylor, 44 S. D. 332, 183 N. W. 998. An act done "wilfully" is done knowingly and designedly; that is, it would be impossible to do an act "wilfully, unlawfully and feloniously" without doing so designedly. We think the information

states a public offense in language sufficiently precise to apprise defendant of the charge against him.

■■ Defendant challenges the sufficientcy of the evidence to support the verdict claiming that the state did not prove that the complaining witness relied upon the implied representation that the accused was entitled to draw upon the bank named in the check for the sum specified therein. The representation must be not only false, but the owner of the property must rely on it. If the owner has knowledge of the truth or does not believe the pretense, or although believing it, yet parts with the property on some other inducment, the offense has not been committed. State v. Van Ruschen, 38 S. D. 187, 160 N. W. 811, 812. But reliance solely on the pretended fact by the owner is unnecessary. It is sufficient if the pretended fact is a part of the moving cause, and without it, the injured party would not have parted with his property. State v. Merry, 20 N. D. 337, 127 N. W. 83.

The charge against defendant arose out of a transaction wherein he purchased seed oats from Christ Peterson. On the day following the purchase, defendant wrote out a check for $48.75 payable to Peterson and handed it to his tenant Alfred Hanson. The latter went to the Peterson farm and after loading the oats on his truck gave this check to Peterson. Payment was refused by the bank because of insufficient funds. The complaining witness, Christ Peterson, testified:

"Q. And when did he or someone else come after these oats? A. Alfred Hanson and Reinhold Hencke, I think it is, they came down the next morning about nine o'clock and of course I knew they wanted oats. And I asked Hanson if Lien had sent any money along.

"Q. What did he say? A. He said he had a check. Well, I had heard about Lien's checks but I never had any before so I thought I would take a chance on at least one.

"Q. Did you load up the oats? A. Yes, we loaded up the oats. They loaded it up, those two boys, those two that came after it. I also cleaned it for them.

"Q. Were the oats weighed out? A. We didn't have no scale and they took it to Hammer and weighed it there in the Hammer elevator.

"Q. Did you have some discussion as to the quality they had gotten? A. I told them when they left that they had more than Lien wanted but we were just all guessing at it of course. I could tell they had more than he bargained for.

"Q. Did you accept the check at that time? A. Yes, I took it.

"Q. And I will ask you whether or not you believed it was genuine. A. Well, I didn't know.

"Q. You relied on it, did you? A. Yes, I did. * * *

"Q. Would you have permitted them to have driven off with those oats if they hadn't had the check? A. No, they would have had to unload the oats.

"Q. In other words you wanted the money and as they didn't have the money, you accepted the check? A. Yes."

On cross-examination the witness was asked:

"Q. At that time nothing was said as to how this oats would be paid for, is that right? A. No, sir.

"Q. There was no statement as to whether you would be paid in cash? A. No.

"Q. There was no statement as to whether it would be paid for in check? A. No.

"Q. And when Lester Lien left the farm that day there was no understanding as to how payment would be made? A. No. * * *

"Q. You have figured that $48.75 is the price of sixty-five bushels of oats at seventy-five cents a bushel? A. Yes, sir.

"Q. Christ, when the oats was weighed at Hammer, did you find out how many bushels of oats had been hauled out? A. Yes, I did.

"Q. And how many bushels of oats had been hauled out? A. I don't remember exactly, somewheres around eighty-four bushels I believe it was. * * *

"Q. And I believe you testified on direct examination that you had heard that his checks might not be good but you took a chance? A. Yes.

"Q. What was that Christ? A. Yes.

"Q. So that at the time that you accepted exhibit one you were doubtful as to whether or not it was good? A. Yes, I was. * * *

"Q. You thought possibly the check was not good, is that correct? A. Well, I wasn't so sure.

"Q. And is that one of the reasons why you went directly to the bank at New Effington? A. No, it just happened that I had a nice chance to ride along with Japdahl to New Effington, otherwise I don't think I would have gotten there that day.

"Q. The main reason you went to Hammer was to check on the weight of the oats? A. Yes.

"Q. And that is the day that you found out there were eighty-five bushels and thirty pounds of oats? A. Yes."

■■ Without encroaching upon the general rule that it is not within the province of an appellate court to determine the weight of evidence and credibility of witnesses, we are satisfied that the testimony of the complaining witness relative to reliance upon the false representation is entirely insufficient to sustain the verdict of the jury. 24 C. J. S., Criminal Law, § § 1880-1884. Defendant had an account with the bank on which he drew the check given Christ Peterson and the other dishonored checks referred to in the record. The drawing of a check with intent to defraud is a misdemeanor under the provisions of SDC 13.4204. The state did not proceed under that section, but charged the defendant under the general statute (SDC 13.4202) with the offense of obtaining property by false pretenses. It was not then sufficient as heretofore pointed out that there was a false pretense; the owner of the property must have relied on it. Complaining witness admitted that he had "heard about Lien's checks", but concluded "to take a chance on at least one". He could have declined to accept the check and refused to deliver the grain, but with knowledge of the risk involved he chose "to take a chance" and delivered to

defendant's tenant not only the amount of grain purchased but an additional amount. Witness testified that he relied on the check, but the question of reliance is not dependent upon such assertion. His testimony considered in its entirety negatives such conclusion. The record does not disclose that the check was an effective cause in inducing him to part with his property. We need not concern ourselves as to why under the circumstances he did not refuse defendant's check. We may point out, however, that defendant was at the time of the transaction a landowner and operated a service station and restaurant in the town of Hammer. The record further shows that witness had known accused for a number of years and had previously dealt with him.

In view of the conclusion that we have reached, we deem it unnecessary to consider the other errors assigned by appellant.

The judgment appealed from is therefore reversed.

SICKEL, P.J., and SMITH, and HAYES, JJ., concur.

RUDOLPH, J., dissents.