**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Kent MAUCK, Defendant and Appellant.**

**No. 12200.**

Supreme Court of South Dakota.

Sept. 21, 1978.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Charles Poches, Jr., Fort Pierre, for defendant and appellant.

ZASTROW, Justice.

This is an appeal from a jury verdict and judgment and sentence for the felony charge of "uttering and delivering" an insufficient funds check under SDCL 22–41–1.1. We reverse.

The facts, taken in the light most favorable to the state are as follows: The defendant, Kent Mauck, operated a livestock trucking business based in Mobridge, South Dakota. In addition, defendant acted as a livestock order buyer for others, as well as himself. In the latter function, he would purchase livestock at a local livestock auction barn, transport the livestock to another local auction barn, and attempt to sell the livestock at a higher price and realize a profit.

The defendant first purchased cattle at auction from the Ft. Pierre Livestock Commission Company (Ft. Pierre C. Co.) in July of 1976. Defendant was present at the auction and issued a check for the livestock purchased. Defendant continued to make livestock purchases from the Ft. Pierre C. Co. over the next several weeks, however, defendant would not be present at the Friday auctions, but was represented by his brother, Charles. The subsequent purchases fell into a basic pattern. Charles Mauck would bid on the livestock, take delivery of and sign an invoice for the livestock. After determining the amount he owed, either by calling Ft. Pierre C. Co. or from the delivered invoices, defendant would mail a check usually two to four days later to Ft. Pierre C. Co. in payment for the livestock.

On September 10, 1976, Charles Mauck again represented the defendant at the Ft. Pierre C. Co. auction. Some $76,000 worth of cattle were purchased and delivered to defendant's brother. Defendant mailed a check to Ft. Pierre C. Co. but was not paid when, according to Dennis Hanson, manager and co-owner of Ft. Pierre C. Co., defendant intercepted the check. The cattle had not been paid for on September 17, 1976, when Charlie Hupp an order buyer, acting as defendant's agent, purchased for defendant cattle worth $6,379.15 from the Ft. Pierre C. Co. The September 10 and September 17 purchases were finally paid by checks issued on September 21, 1976.

The present charge arose from the Ft. Pierre C. Co. auction on September 24, 1976. Charlie Hupp again represented defendant and was the successful bidder on cattle of a total purchase price of $55,237.01. On the evening of the sale, Dennis Hanson spoke with defendant and advised him of the amount of the purchase made on his behalf. Hanson testified that Ft. Pierre C. Co. "would have to have a check right away," and that defendant advised him that he

"'was sticking a check in the mail right away." [1]

On Sunday, September 26, 1976, the cattle were picked up by agents of defendant using his trucks. On the same day, the cattle were delivered to the Gettysburg auction barn to be sold at the Monday auction.

On Monday, September 27, 1976, the defendant's check was received by Ft. Pierre C. Co. [2] On September 27, Hanson took the check to his bank and a call was made by them to defendant's bank. The Mobridge Bank confirmed Hanson's suspicions that the check was "no good." The check was then deposited in the Ft. Pierre C. Co. account and presented to defendant's bank for payment. [3] Payment was refused for insufficient funds in defendant's account. Defendant was charged with a felony violation of SDCL 22–41–1.1.

The only issue of merit raised by defendant is the sufficiency of the evidence to support the conviction. [4]

SDCL 22–41–1.1 describes the crime as follows:

*Any person who for himself* or as agent or representative of another or as an officer or member of a firm, company, copartnership, association or corporation who *shall for present consideration, willfully, with intent to defraud, make, draw, utter or deliver a check in an amount of one hundred dollars or more,* or a series of checks drawn on any bank or banks within any thirty-day period totaling one hundred dollars or more, *for the payment of money upon any bank or other depository knowing at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in such bank* or other depository *for the payment of such check,* draft or order and all other checks, drafts or orders upon such funds then outstanding, *in full upon presentation, although no express representation is made with reference thereto, shall be guilty of a felony* and upon conviction thereof shall be punished by imprisonment in the state penitentiary for a period not to exceed three years or confinement in the county jail for a period not to exceed one year or a fine not to exceed one thousand dollars or both such fine and imprisonment. (Emphasis added.)

 The most important question in this matter is the statutory requirement of "present consideration." The crime of passing an insufficient funds check as defined by SDCL 22–41–1.1 is a form of the broader offense of obtaining money or property by false pretense. The legislature specifically retained the element of the transfer of money or property by requiring that there must be "present consideration" given before the crime is committed. Statutes requiring such present consideration as an element of the offense are interpreted to require that the surrender of the consideration, be it money, chattels, property, or services, be made in reliance upon the apparent validity of the check. 2 Wharton, Criminal Law & Procedure §§ 615, 616; Perkins, Criminal Law at page 317; 35 C.J.S. False Pretenses § 21c; 32 Am.Jur.2d False Pretenses §§ 77, 78. See also *State v. Bundrock,* 1926, 49 S.D. 483, 204 N.W. 484. In other words, the representation, i. e., the check, must, by its deception, induce a transfer of the consideration to the person committing the fraud to the loss of the

---

1. Defendant testified that he advised Hanson that the check would have to be held for two or three days; Hanson could not remember such conversation, however, we do not find it of consequence under the fact situation here.

2. Defendant testified that he did not mail the check until Sunday, September 26, 1976, and there is evidence indicating that the check was not received until September 28, however, either receipt date does not change the result under this factual situation.

3. Hanson testified that he thought it was deposited on September 27, 1976; the evidence, in the form of a date stamped on the check and the teller's testimony, indicates that it was deposited on September 28, 1976; however, the deposit date is not important in a resolution of this case.

4. Appellate counsel did not represent defendant at the time of trial.

person relying upon it. *State v. Lien*, 1947, 72 S.D. 94, 30 N.W.2d 12.

Thus insufficient funds checks given for past debts are not a violation of a statute such as SDCL 22–41–1.1 because the false representation, i. e., the check, did not induce the transfer of the consideration. Rather the transfer was made based upon the promise (express or implied) of the recipient to pay for the property at a later date, i. e., the "credit" of the recipient. *State v. McLean*, 1950, 216 La. 670, 44 So.2d 698; *State v. Sinclair*, 1975, 274 Md. 646, 337 A.2d 703.

The State asserts that the transfer of the cattle was present consideration for the check. In order for the Ft. Pierre C. Co. to rely upon the check they would have to have known of its existence. Under the circumstances, here, they could not have known when they transferred the cattle to defendant's agent whether the check had been drawn or executed or mailed.

The reliance by the officer of the company was not upon the apparent validity of the check, but upon the promise of defendant to make payment in the future. When the cattle were transferred to defendant's agent, their reliance was, and could only have been, upon the defendant's credit.

Certainly, the defendant could not be convicted had he merely drawn the check but failed to mail it; nor could he be convicted had he mailed it but it was never received by the Ft. Pierre C. Co. Could he be convicted had the check arrived one week later, two months later? We think not, for the simple reason that the check was not the inducement that led to the transfer. Rather it was defendant's promise that the cattle would be paid for at an indefinite future date that induced the transfer.

The judgment of conviction is reversed and the matter remanded with directions to enter a judgment of acquittal.

All the Justices concur.