STATE v. J. H. SOUTHALL.

July 14, 1899.

Nos. 11,706—(21).

## Grand Larceny—Indictment.

In an indictment for statutory larceny (formerly designated as obtaining money, etc., by false pretenses), under G. S. 1894, § 6709, subd. 1, it is not necessary to use the exact words, "with intent to defraud." Equivalent language will suffice. An allegation that the defendant unlawfully, knowingly, etc., and with an intent to deprive the true owner of his property, by means, color, and aid of certain false writings and representations, then and there known to the defendant to be false, amounts to an allegation of an intent to defraud.

## Time Check—Evidence.

The crime was alleged to have been committed in part by means of certain false writings called "time checks." Evidence that defendant had circulated other similar false time checks, which he knew to be

false, was competent, as tending to prove guilty knowledge and criminal intent in circulating the checks, by means of which the defendant committed the crime charged.

## False Representation—False Writing.

The false representation need not be oral, where the crime is committed by means of false writings. Offering the paper for sale or as security for a loan of money may, of itself, amount to a false representation. Where the crime is committed by means of a false writing, it is not necessary that the writing is one which, if genuine, would be of legal validity.

## Same.

Neither is it necessary that the false pretense or representation should be one which was calculated to deceive men of ordinary intelligence or business prudence. A false pretense or representation is to be weighed by its effect, and one calculated to deceive or defraud the weak and ignorant is as obnoxious to the law as one adapted to deceive the strong and intelligent.

Defendant was indicted in the district court for Ramsey county for grand larceny in the first degree. The case was tried before Brill, J., and a jury, which rendered a verdict of guilty; and from an order denying a motion for a new trial, defendant appealed. Affirmed.

*Nelson & Bramhall,* for appellant.

*W. B. Douglas,* Attorney General, *Horace E. Bigelow,* County Attorney, and *F. W. Zollman,* Assistant County Attorney, for the State.

MITCHELL, J.

The defendant was indicted, tried, and convicted, under G. S. 1894, § 6709, subd. 1, of grand larceny in the first degree, committed by means which, prior to the adoption of the penal code, was designated as obtaining money, etc., by false pretenses. This subdivision, together with the preceding and closing parts of the section, which are applicable to both subdivisions, reads, so far as here material, as follows:

"A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either (1) Takes from the possession of the true owner, or of any

other person; or obtains from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing; * * * any money, * * * Steals such property, and is guilty of larceny."

The first clause of subdivision 1 was evidently intended to apply to common-law larceny, and the second clause to·what was designated as obtaining money, etc., by false pretenses. Subdivision 2 was intended to apply to what was designated as "embezzlement." Then the definition of "larceny," as applied to this case, would be as follows: "A person who, with intent to deprive or defraud the true owner of his property, obtains possession of it from the true owner by color or aid of fraudulent or false representation or pretense, or of any false token or writing, steals such property, and is guilty of larceny."

The indictment is too long to be quoted in full, but the most important part of it reads as follows:

"Did wrongfully, unlawfully and feloniously, and wilfully, knowingly and designedly, and with the intent then and there had and entertained by him the said J. H. Southall to deprive the true owner of his property, and by means, color, and aid of certain false writings and false and fraudulent pretenses and representations * * * obtain," etc.

The indictment also alleged that the defendant then and there well knew that, in truth and fact, said writings, pretenses, and representations were false and untrue.

The objection to the indictment is that it does not allege an intent to "defraud," which is of the essence of the crime charged. It is undoubtedly true that the words, "with intent to deprive" a person of his property, when standing alone, do not necessarily imply an "intent to defraud" him of it; but an intent, knowingly and designedly, to deprive him of it by means, color, and aid of false writings, and false and fraudulent pretenses and representations, known at the time to be false, necessarily involves and includes an intent to defraud. It is unnecessary to use in an indictment the precise words of the statute. Words that are equivalent to, and synonymous with, them are sufficient. If the allegations of the indictment are true, the defendant must have done what he did with intent to

defraud. The word "defraud," as used in this section, applies to its second subdivision as well as the first; but in State v. Comings, 54 Minn. 359, 56 N. W. 50, we held that the word was not necessary, in an indictment for larceny, under the former subdivision. The indictment is sufficient.

The defendant had formerly been, but was no longer, chief clerk in the United States engineer's office in St. Paul. The false writings by means of which the defendant is alleged to have committed the crime charged were what are termed "time checks," and were all alike, except dates, names and amounts, and were of the tenor following:

"United States Engineer Office, Army Building, St. Paul, Minn. ———. ——— has been employed on the works for improving the Mississippi river during the month of ———; amount to pay, ———; amount advanced to him, ———; balance due, ———."

J. H. Southall, Chief Clerk."

Indorsed:
"United States Engineer Office, Army Building, St. Paul, Minn., ———.

This time check will be paid at this office ——— if presented in person or properly indorsed by ———.

"J. H. Southall, Chief Clerk."

Evidence was admitted, over defendant's objection, tending to prove that he had issued numerous other time checks of the same tenor as those, by means of which he had committed the crime charged, and that he had admitted, in substance, that they were false and fraudulent, and that he knew that fact. It is claimed that this evidence was incompetent, on the ground that it tended to prove the commission by the defendant of crimes other than the one charged. The evidence was admissible, under the familiar rule that, when criminal intent or guilty knowledge in respect of the act is an element in the offense charged, evidence of other like acts of the accused, manifesting that intent or knowledge, is competent, notwithstanding it may establish the commission of another offense not charged. A common illustration of this is where a party is charged with circulating forged paper. Evidence that he circulated other forged paper is held admissible as tending to prove his guilty knowledge and criminal intent. This rule is peculiarly ap-

plicable in cases involving fraud, where a series of similar acts tend· to show a regular system of fraud. The defendant's guilty knowledge and criminal intent were of the very essence of the crime charged. Evidence that he had circulated other false "time checks," with knowledge of their falsity, had a legitimate tendency to prove that he had guilty knowledge and a criminal intent in circulating the time checks, by·means of which he defrauded Emmons, the complaining witness.

The court instructed the jury

"That the representation of these papers in themselves might be sufficient representation, without any oral declaration at all in regard to them,  * · *  * a paper of this character may have been sold and purchased, under circumstances, without any oral declarations at all on the part of the seller, and yet a representation may be inferred without, any oral representation,—any spoken words at the time."

This being an extempore oral instruction, its grammar may be subject to some criticism; but construing it as the court evidently meant, and as the jury under the circumstances must have understood it, and as defendant's counsel himself construes it, it was undoubtedly correct. The false pretense or representation need not be in words. The conduct and acts of the party may be sufficient, without any verbal assertion. 2 Wharton, Cr. Law (9th Ed.) § 1170; 2 Bishop, Cr. Law, § 430. The mere act of offering for sale, or as collateral security for the loan of money, forged or false paper, amounts, by implication, to an affirmation that it is genuine.

It is further urged, in this connection, that these time checks do not purport on their face to have been issued by the government, or that the persons therein named had performed work for the government, or that the government owed them anything; and, furthermore, that, even if they represented claims against the United States, they would be nonassignable, under R. S. (U. S.) § 3477.

We are not sure that we fully understand the point to which this is directed. If it means that these "time checks" did not constitute false tokens or pretenses because they are not such that, if genuine, they would be of any legal validity, then counsel has mistaken the rule in forgery for the rule applicable to obtaining prop-

erty by a false writing. State v. Henn, 39 Minn. 464, 40 N. W. 564. If, however, it means that it was so apparent from the face of the writing that it did not purport to represent a claim against the United States that nobody could have believed or relied on any representations that it was such a claim, then it is equally without merit. Coupled with the facts that the United States were employing men on works for improving the Mississippi river, and that those in the engineer's office in St. Paul had charge of the work, the representations contained in the checks themselves that they were executed at that office by the chief clerk therein, and were payable there, and were for work performed on the works for improving the Mississippi, might well be intended to be understood as a representation that the time checks did constitute a claim against the United States, and would be paid by the government, and would be so understood by those to whom the checks were offered for sale or as security. Perhaps a skilled lawyer, or a shrewd and experienced business man, would not have been deceived by any such false pretense or representation; but the statute is enacted for the protection of the entire community,—the weak and ignorant as well as the shrewd and the strong. A false pretense or token is to be weighed by its effects, and one calculated to mislead or defraud a weak mind is as obnoxious to the law as one adapted to deceive and defraud a strong one. 2 Bishop, Crim. Law, § 433.

There was no exception to that part of the charge which forms the subject of the eighth assignment of error; but, if there had been, we do not discover anything in it wherein the court transcended his duty in instructing the jury.

The request the refusal of which constitutes the ninth assignment of error was properly refused, for the reasons (1) that, in so far as it was good law, it was sufficiently covered by the general charge; and (2) because it was misleading, and did not fully or accurately state the law on the subject. Its meaning was also obscure and doubtful.

This covers all the points urged by counsel, and the result is that the order denying defendant's motion for a new trial is affirmed.