## STATE v. GERRIT J. JANSEN.[1]

March 1, 1940.

No. 32,286.

*Ahles & Ahles,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Hayes Dansingburg,* Assistant Attorney General, and *Harry E. Burns,* County Attorney, for the State.

PETERSON, JUSTICE.

Defendant was convicted of aiding and abetting one Anna Walburga Danials to obtain an old age assistance certificate in

[1]Reported in 290 N. W. 557.

violation of Ex. Sess. L. 1935-1936, c. 95, § 21 (3 Mason Minn. St. 1938 Supp. § 3199-31), which so far as here material provides:

"Any person * * * who by means of a wilfully false statement or representation, * * * aids or abets any person to obtain:

"(a) An old age assistance certificate to which he is not entitled * * * shall be guilty of a gross misdemeanor."

Section 6 of the statute [3 Mason Minn. St. 1938 Supp. § 3199-16] provides that no person shall be entitled to old age assistance unless he is of the age of 65 years.

The original indictment alleges that on April 22, 1936, defendant by means of wilfully false representations aided and abetted Anna Walburga Danials to obtain old age assistance from Stearns county, she being at the time not "eligible" for old age assistance in that she had not attained the age of 65 years.

The state was permitted over defendant's objection to amend the indictment so as to allege the particulars of the false representations, the county board's reliance thereon and inducement thereby to issue the old age assistance certificate, and that defendant by means of such statements and representations aided and abetted the applicant to obtain from Stearns county an old age assistance certificate for $30 per month, to which she was not "entitled."

The application of Miss Danials for old age assistance was filed with the county board on March 9, 1936. It stated that she was 66 years of age, that she was born on January 1, 1870, in Minnesota, that she was a citizen residing at Greenwald, and other facts which, if true, entitled her to such assistance.

Defendant was an investigator for the county agency. The application was referred to him for investigation. He called personally on Miss Danials. She was an invalid living with her cousin. On April 22, 1936, defendant made a report in substance that the statements in the application were true. Among other things he stated that she was 67 years of age, that the date of her birth was January 1, 1870, and that she was a citizen. Her

age and date of birth and citizenship he certified were verified by her birth certificate.

On April 28, 1936, the county board acting in reliance on defendant's report granted Miss Danials' application and issued to her an old age assistance certificate for $30 per month.

There was evidence to show that defendant's report was false, consisting of Anna Walburga Danials' birth record in the clerk of court's office that she was born on January 2, 1877; her baptismal record that she was baptized at St. John's Church in Meier Grove on January 7, 1877, with testimony by the pastor that such baptisms ordinarily are performed just as soon as convenient and not more than two months after birth of a child; the absence of any record of such a baptism at St. Michael's Church in Spring Hill, where defendant claimed there was one; and the records in the matter of Miss Danials' guardianship showing that she was 50 years of age in 1926, thus confirming that she was only 60 years of age in 1936.

The state over defendant's objections was permitted to show both defendant's subsequent acts with respect to this particular old age assistance certificate and similar acts in two other cases at or about the time involved. The subsequent acts with respect to this particular case consisted of two reports by defendant: One on October 22, 1936, in which he stated that her date of birth was June 1, 1870 (in the others he gave it as January 1, 1870), which he claimed to have verified by a birth certificate, and the fact of citizenship by a baptismal certificate issued by St. Michael's Church in Spring Hill; and the other on April 9, 1937, in which he gave the date of her birth as January 1, 1870, which together with the fact of her citizenship he claimed to have verified by a baptismal certificate from the said St. Michael's Church, which he saw.

The other similar offenses were that defendant made similar false statements and representations with respect to age and verification thereof in his reports of the cases of one Chermak and one Lentz, whose cases he investigated.

Defendant testified that he went to call on Miss Danials, who lived with her cousin and guardian, a Mr. Winning; that Mrs. Winning furnished the information which he made the basis of his reports, and that Miss Danials appeared to be over 65 years of age. He said that he believed Mrs. Winning and relied on her. She was not called as a witness. He admitted that he never saw a baptismal certificate or church record. He did not make any inquiries at St. Michael's Church in Spring Hill, because he had been told that the church had burned and the records were destroyed. He accounted for the statement in his report of October 22, 1936, that the applicant was born in June instead of January as a typographical mistake of the stenographer who wrote up the report. There was a suggestion that his false statement in the report of April 9, 1937, that he saw the baptismal certificate showing her birth as January 1, 1870, was inserted by mistake in copying the report from a form which he used; but the form itself contained the same statement and was signed by him. He made no attempt to explain the reports of the Chermak and Lentz cases, but he called attention to the fact that he investigated and reported over 600 cases and that error was found only in these three cases.

The assignments of error are: That the amendment of the indictment was not permissible under 2 Mason Minn. St. 1927, § 10648, for the reason that it changed the name and identity of the offense charged; that the evidence of false statements in subsequent reports of the Danials case and in the reports of the Chermak and Lentz cases was not admissible upon the ground that it tended to show the commission of independent crimes not charged in the indictment; that the evidence was insufficient to sustain a verdict of guilty; that the court erred in charging on the purpose for which the evidence of the subsequent reports and the reports in Chermak and Lentz cases was received; and misconduct of the prosecuting attorney in his closing argument.

1. Defendant's contention that the amendment was not permissible is based upon the claim that in effect it charged a new

offense rather than amended the original one. The original indictment charged defendant with aiding and abetting Miss Danials, by means of false representations, to obtain old age assistance for which she was not "eligible," she not having attained the age of 65 years. The offense is charged in the language of the statute, except that the indictment uses the word "eligible" and the statute the word "entitled." A person is not entitled to assistance unless he is 65 years of age. He must be 65 years of age, in other words, to be eligible therefor. The word "eligible" is under the circumstances the equivalent of the word "entitled." It is sufficient that the charging words are equivalent in meaning to those of the statute. State v. Southall, 77 Minn. 296, 79 N. W. 1007. An indictment may be amended under 2 Mason Minn. St. 1927, § 10648, "both as to form and substance," provided there be no change in the name or identity of the crime charged and that the defendant be given a reasonable time to prepare his defense. Although some of the allegations in the original may be conclusions of law rather than statements of fact, they show that the intention was to charge the offense which was set forth in the amendment. The purpose of the statute is to save indictments against defects and deficiencies of substance and form by amendment stating the offense intended to be charged. State v. Heffelfinger, 197 Minn. 173, 266 N. W. 751. The amendment here simply supplied details by setting forth the specific representations and the reliance thereon. An amendment of an indictment so as to amplify and state in detail the nature of the false representations and reliance thereon does not allege a new offense, but merely restates with particularity the original one. State v. Foxton, 166 Iowa, 181, 147 N. W. 347, 52 L.R.A.(N.S.) 919, Ann. Cas. 1916E, 727; Spoo v. State, 219 Wis. 285, 262 N. W. 696; 22 Am. Jur., False Pretense, § 100, note 12.

2. The evidence of similar false statements in subsequent reports of this case and in the reports of the Chermak and Lentz cases was admitted to show guilty knowledge and criminal intent. Defendant handled about 600 similar cases. Proof of other

similar acts of the kind mentioned tends to characterize an act which might have been committed innocently or under mistake. While one isolated act in investigating and reporting on a claim might be explained upon the ground that it was innocently committed through mistake or otherwise, other similar acts with respect to the same claim, as well as others at or about the same time, have a reasonable and natural tendency to show that the specific act was knowingly committed with unlawful intent. Repetition tends to show that an act was intentional and lessens the probability of mistake. It makes no difference whether the other acts were committed before or after the offense charged. State v. Bourne, 86 Minn. 426, 90 N. W. 1105. Any showing of other offenses was only incidental to the characterization of the specific act charged. That evidence incidentally shows other offenses does not render it inadmissible. State v. McClendon, 172 Minn. 106, 214 N. W. 782. The evidence may have been admissible on other grounds, which we do not now need to decide.

3. The evidence is sufficient to sustain the verdict of guilty. Defendant urges that there was no proof of motive, since there was no showing of actual or intended gain to himself by the act charged. A strong desire to help Miss Danials get old age assistance was shown, and, however praiseworthy the desire to be helpful in itself may have been, such desire was the motive that led him to accomplish that purpose by means of the unlawful acts of which he stands convicted.

The fact that defendant made a false statement in the first report of the case, on which the county' board relied in issuing the old age assistance certificate, is proved beyond doubt. This cannot be seriously controverted. The jury was not bound to accept defendant's explanations at their face value. In the first report he merely said that he verified the facts of date of birth and citizenship by a baptismal certificate without identifying it; in the second report he identified the certificate as one issued by St. Michael's Church without saying whether or not he saw it; and in the third report he said that he saw the certificate. The increased emphasis in successive reports of the fact of verifi-

cation shown to be false suggests consciousness of the falsity of the original statement and need to exculpate himself. He admitted that his statement that he saw the certificate was false. That he might have deemed it safe to make the false statement may be inferred from the fact that he believed that proof to the contrary was unavailable because of the fire which destroyed St. Michael's Church, which, contrary to his understanding, did not destroy the church records.

His claim that the false statement of age was the result of copying from the original reports does not appear to be substantiated, since the record shows that the originals contained the same false statements as the final reports.

His previous good character and reputation stand undisputed, but do not require an acquittal.

Whether he relied on Mrs. Winning was a fact question. According to his testimony, she told him on April 22, 1936, that Miss Danials was born in 1870 and was 67 years old. A mere mathematical computation would have shown that she was 66 years old at the time if date of birth was as given. Furthermore, defendant did not call Mrs. Winning as a witness without any explanation. The rule that unexplained failure to call a witness or produce evidence within the control of a party permits an inference that the witness if called or the evidence if produced would be unfavorable to the party, see Vorlicky v. Metropolitan Life Ins. Co. 206 Minn. 34, 40, 287 N. W. 109; M & M Securities Co. v. Dirnberger, 190 Minn. 57, 250 N. W. 801; 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3444, applies against a defendant in a criminal case, except only his own failure to testify. Commonwealth v. Spencer, 212 Mass. 438, 99 N. E. 266, Ann. Cas. 1913D, 552.

To state in detail all the evidence would unduly prolong the opinion. The jury was warranted in believing that the evidence as a whole showed that the false representation was wilfully made.

4. The closing argument of an assistant attorney general, who assisted the prosecution, is vigorously assailed. The argu-

ment was taken down by the reporter. At one point defendant objected and the court promptly checked the argument to which he objected. No other objections were made at the trial, but error was assigned thereon in the motion for new trial. There were no requests to instruct the jury with respect to any matters which defendant claims were objectionable. Ordinarily a party must suggest to the trial court the objectionable argument and request appropriate instructions to cure the error before the jury retires. Objections to argument of counsel made for the first time on motion for new trial are not timely and will not be reviewed on appeal. Eilola v. Oliver I. Min. Co. 201 Minn. 77, 275 N. W. 408.

Other assignments do not merit separate consideration. Defendant concedes that the assignments with respect to the instructions are controlled by decision of the questions relating to the admissibility of evidence of other similar acts. The conviction should be affirmed.

Affirmed.